577 So.2d 324 (1991)
John BRASSEAUX
v.
LOUISIANA STATE RACING COMMISSION.
No. 90-CA-0677.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1991.
Writ Denied May 24, 1991.
*325 Salvador Anzelmo, Thomas W. Milliner, New Orleans, for plaintiff.
William J. Guste, Jr., Atty. Gen., Robert A. Barnett, and John E. Jackson, Jr., Asst. Attys. Gen., New Orleans, for defendant.
Before BYRNES, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, John Brasseaux, appeals the trial court's judgment affirming the decision of the Louisiana State Racing Commission to suspend his license for one year and fine him $2,000.00.
John Brasseaux, is a duly licensed owner/trainer of thoroughbred horses in the State of Louisiana. Among the horses trained by Brasseaux is Patsy's Last Hope which placed second in the third race at Delta Downs, Louisiana on February 24, 1989.
Following the race, in accordance with the Rules of Racing promulgated by the Commission, a sample of the urine of Patsy's Last Hope was taken and tested by the commission chemist who reported the sample positive for the drug pemoline on March 7, 1989.
On March 11, 1989 Brasseaux was suspended by the stewards at Delta Downs pursuant to Ruling No. 206 under which ruling Brasseaux was denied all racing privileges as a trainer and denied all access to all race tracks under the supervision of the commission. Further, the stewards referred Brasseaux's case to the commission for any further action it deemed necessary. The aforesaid ruling also disqualified Patsy's Last Hope from the Third Race at Delta Downs on February 24, 1989 and redistributed the purse of that race.
Following a hearing held before the commission on April 27, 1989, Brasseaux's license was ordered suspended for a period of one year effective April 27, 1989, and Brasseaux was denied all privileges of, access to, all race tracks and off-track wagering facilities under the jurisdiction of the commission during the period of suspension. Brasseaux was also fined $2,000.00.
On May 10, 1989, Brasseaux filed a petition requesting judicial review of the commission's *326 ruling and obtained a stay of the commission's ruling in conjunction therewith.
On February 16, 1990, the trial court affirmed the commission's decision from which judgment Brasseaux perfected the instant appeal.
In his first assignment of error Mr. Brasseaux complains that the commission chemist failed to provide documentary or demonstrative evidence to support his professional opinion that the urine specimen from Patsy's Last Hope tested positive for pemoline.
LAC 35:1785 provides as follows:
In reporting to the state steward that a test of a specimen was positive for a prohibited substance, the commission chemist shall present documentary or demonstrative evidence acceptable in the scientific community and admissible in court in support of his professional opinion as to the positive finding.
Referring to Black's Law Dictionary (5th ed. 1979) Brasseaux defines "documentary evidence" and "demonstrative evidence", respectively, as follows:
Evidence derived from conventional symbols (such as letters) by which ideas are represented on material substances. Such evidence as is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissable for the purpose, as distinguished from "oral" evidence, or that delivered by human beings viva voce.
p. 433
That evidence addressed directly to the senses without intervention of testimony. Real ("thing") evidence such as the gun in a trial of homicide or the contract itself in the trial of a contract case. Evidence apart from the testimony of witnesses concerning the thing. Such evidence may include maps, diagrams, photographs, models, charts, medical illustrations, x-rays.
p. 389
Brasseaux argues that the commission chemist, Dr. Steven A. Barker, submitted a "report", a one page form letter dated March 7, 1989 addressed to the former Secretary of the Commission, Mr. Allen LeVasseur. This report reads, in its entirety, as follows:
Dear Mr. LeVasseur:
This is to inform you that sample number 5693N D4875 has been confirmed as POSITIVE FOR THE DRUG Pemoline in violation of the Rules of Racing, LSRC.
The presence of this drug in horse urine sample D4875 was indicated by thin layer chromatography and was confirmed by gas chromatography/mass spectrometry.
 Sincerely,
 S/
 Steven A. Barker, PhD
Brasseaux submits that the foregoing letter merely makes a conclusory finding. Specifically he argues that the test results which would support the alleged finding was not included in the "report". He asserts that no other evidence was submitted to the state steward other than the foregoing letter. Furthermore, the commission chemist did not appear at the steward's hearing.
Use of the word "shall" in a statute or rule denotes a mandatory duty. Ray v. South Central Bell Telephone Company, 315 So.2d 759, 761 (La.1975); R.J. D'Agostino v. City of Baton Rouge, 504 So.2d 1082, 1084 (La.App. 1st Cir.1987). Therefore, Brasseaux argues the commission failed to fulfill its mandatory duty under LAC 35:1785. Brasseaux argues that its failure to provide any documentary or demonstrative evidence to support the commission chemist's opinion should render these proceedings totally void ab initio and the commission's decision suspending his license should be reversed and set aside.
We disagree. Brasseaux is incorrect in saying that no other evidence was submitted to the commission. In fact a split sample reanalysis was performed by Ohio State University in Columbus, Ohio, in accordance with LAC 35:1775, which confirmed the presence of pemoline. Furthermore, a quantifier test which revealed that the amount of the substance present was *327 large, not trace, was introduced in globo at the hearing. Dr. Barker stated that the report he issued to the stewards was normal in the trade. Also both reports, from the state chemist's office and Ohio State University, indicate in what condition the sample was received, what testing procedures were used and the outcome of those procedures. There is no question that the results are acceptable in the scientific community and admissable in court.
In his second assignment of error, Brasseaux cites Hall v. Louisiana State Racing Commission, 505 So.2d 744 (La. App. 4th Cir.1987), to support his argument that the suspension of a trainer's license based upon nothing more than the Commission's in globo introduction of evidence, without any foundational testimony deprives a trainer of his right to due process.
Brasseaux has misinterpreted this court's holding in Hall. The court did not find error with the in globo introduction of evidence or with the introduction of hearsay documentary evidence in an administrative hearing. Its concern was that the totality of the evidence against Hall was documentary and hearsay.
We do not disagree with the principle that hearsay evidence, which possesses probative value, may be submitted at an administrative hearing, nor do we dispute the fact that the agent's records and reports may be introduced into evidence. However, in the case before us we are concerned with the problem of a trainer being suspended for five years on a finding based only on hearsay documentary evidence. There was no other competent evidence submitted, only the steward's findings, and the State Chemist's reports.
Hall, supra at 746.
In Hall, this court cited La.R.S. 49:955 which provides the procedural due process safeguards of an administrative hearing. The court paid particular attention to paragraph (C) which provides:
Opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
(emphasis added).
Brasseaux was afforded the opportunity of cross-examining live witnesses in the instant case. The commission offered live testimony from the state steward, the commission chemists, the commission veterinarian, (who supervised the operation of the test barn), and the commission specimen collector of the specimen involved herein. Furthermore, Brasseaux took advantage of his opportunity and cross-examined all the afore-mentioned witnesses. We find that the commission more than adequately complied with the minimal standards for due process in administrative hearings pursuant to Louisiana Administrative Procedure Act, (LAPA), La.R.S. 49:950 et seq.
Finally, Brasseaux argues that the Commission failed to connect the specimen taken from Patsy's Last Hope with the specimen allegedly delivered to the Louisiana State Veterinarian's Lab.
The chain of custody rule has been summarized as follows:
The purpose of the chain of custody rule is to assure the integrity of the evidence, i.e., to prevent evidence from being tampered with or being lost. Schwab for & on Behalf of Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.1985), writ ref. 464 So.2d 1386 (1985), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985). Accordingly, before test results, including blood alcohol tests results, can be admitted in a civil or a criminal proceeding, the party seeking to introduce the results must lay a proper foundation by "connecting the specimen with its source, showing that it was properly taken by an authorized person, properly tested." Swanson v. Estate of Augusta, 403 So.2d 118, 124 (La.App. 4th Cir.1981), writ ref., 407 So.2d 732 (La.1981).
Bufkin v. Mid-American Indemnity Co., 528 So.2d 589, 592 (La.App. 2d Cir.1988).
Brasseaux argues that the break in the chain of custody began at Delta Downs Race Track. He argues that there is no *328 evidence as to who took the sample from the race track to the bus station at Lafayette. Presumably, the urine sample was handed to someone at the bus station who ultimately handed it to a bus driver at the Lafayette bus station. There is no indication in the record as to who the bus driver was.
Further, Brasseaux argues, the break in the chain of custody continued at the Baton Rouge bus station. There are no receipts or testimony in the record indicating who handled the sample at the Baton Rouge bus station or who picked up the sample to transmit it to the Louisiana State Veterinarian's Lab. There is nothing in the record to even indicate how the sample allegedly got from the Baton Rouge bus station to the Louisiana State Veterinarian's Lab.
Brasseaux insists that the break in the chain of custody continued at the Louisiana State Veterinarian's Lab. There are no receipts or testimony in the record indicating who handled the sample at the Louisiana State Veterinarian's Lab.
In Bufkin, supra, the plaintiffs argued that a proper foundation for admitting the results of a blood alcohol test had not been laid where the person who drew the blood sample did not testify. The court ruled that this was an omission which constitutes a break in the chain of custody. However, there is no specific omission in the instant case. The record supports a finding that the source of the urine sample was established, the sample was properly labeled and preserved, properly transported, properly taken by authorized person and properly tested. There is no provision in the rule that every person associated with the procedure be identified, only that safeguards be instituted to insure the integrity of the evidence.
The racing commission has a host of security procedures. Namely, once a sample is taken it is sealed and labeled. Those responsible for taking and testing the samples are required to initial it. When transported the sample is stored in a box sealed with tamper-evident tape and it is signed by the persons who ship the box. Dr. Barker testified that if there is any indication that the box is opened or that the samples were tampered with the commission is notified.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.