701 So.2d 1059 (1997)
Richard F. CAIN
v.
JEFFERSON PARISH DEPARTMENT OF FLEET MANAGEMENT.
No. 97-CA-539.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1997.
*1060 William R. Mustian, III, Metairie, for Plaintiff/Appellant.
Clement P. Donelon, Metairie, for Appointing Authority/Appellee.
Before GAUDIN, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Richard F. Cain, plaintiff herein, appeals a judgment of the Personnel Board for the Parish of Jefferson (Board) which upheld the termination of his employment and dismissed his appeal. For reasons that follow, we affirm.
The record shows that Mr. Cain was employed with the Jefferson Parish Department of Fleet Management for about fifteen years. On June 25, 1996, while in the process of test driving a large grass cutting machine he was repairing, Mr. Cain struck the wall of the shop, causing minor damage to the electrical conduit and fire alarm. Pursuant to standard procedures, his supervisor, Warren St. Cyr, made a report on the accident and ordered a drug test for Mr. Cain. Mr. Cain admitted causing the accident, and voluntarily took the drug test.
Mr. Cain went to the Elmwood Industrial Medical Center on the same day, where he complied with all procedures for collection of a urine specimen, and related paperwork. In accordance with standard procedure, a split, or double, specimen was taken. The specimen was sealed in Mr. Cain's presence and subsequently mailed to the Smithkline Beecham Clinical Laboratories in Atlanta for analysis. When the specimen tested positive for marijuana, plaintiff exercised his option to have the second specimen tested at an independent lab. That test also indicated a positive reading for marijuana. As a result of the two drug tests Mr. Cain was terminated.[1]
Plaintiff appealed that action to the Personnel Board. After a hearing on the merits, the Board upheld the termination. Plaintiff now seeks review in this court.
In brief to this court, plaintiff assigns two errors in which he challenges the validity of the drug test. He argues that the appointing authority did not meet its burden of proof that its drug testing procedures were followed, and that it did not adequately establish a chain of custody.
At trial there was extensive testimony from Simone Hebert, the technician who took the sample, regarding the collection, labeling, and sealing of the specimen. There was also testimony from Dr. Michael Feldman, a forensic toxicologist who is the technical manager of substance abuse testing for Smithkline Beecham Clinical Laboratories in Atlanta, where the urine analysis was done. He gave detailed testimony regarding the screening and confirmation tests completed, *1061 as well as, efforts taken to insure that there is no carryover reading from a previous test. The tests conducted at Smithkline Beecham use the same scientific methodology used in accordance with the National Institute of Drug Abuse (NIDA)/Substance Abuse & Mental Health Services Administration (SAMHSA) and called for under federal regulations, although the federal language was not used because the test was not federally mandated.
After the test was conducted, Dr. Robert J. Pflug, a local medical review officer, testified that he reviewed all of the documentation in this matter and confirmed the chain of custody and the methodology of the test. After he verified the positive results, he informed Mr. Cain, who elected to have the split specimen independently tested by Methodist Hospital Clinical Laboratory Services which also recorded a positive reading for marijuana.
Both Dr. Pflug and Dr. Feldman testified that the high levels of the major metabolite of marijuana found the Mr. Cain's urine could not have been caused by passive inhalation of the drug. After the testimony was completed, a document package containing numerous forms and verification of test procedures were introduced at trial and are contained in the record on appeal.
At trial, Mr. Cain stated that he does not smoke marijuana personally, but is often exposed to the drug passively by family members and friends who smoke it in his presence. Mr. Cain raised no objection at trial to the admission of the tests. His defense was that the positive reading for marijuana metabolites was due to passive inhalation.
His arguments to this court address the validity of the tests. Because no contemporaneous objection to the admissibility was made at trial, that matter is not before this court. La. C.E. art. 103. Therefore, plaintiff's objections to the drug tests will be considered in terms of the weight of the evidence.
Although he asserts that no definite Jefferson Parish guidelines were followed by the certified medical assistant who took the urine sample, plaintiff does not specify which guidelines were applicable and which were disregarded. Nor does he suggest that the failure to abide by those guidelines resulted in a false reading in the drug test. His argument is that there is no testimony as to the exact amount of urine taken for testing. This test was done with Mr. Cain's knowledge and consent and he was present when the specimens were labeled, sealed, and packaged for transport. Further, there is evidence that the tests were conducted in accordance with federal guidelines by a competent laboratory, and reviewed by a local medical review officer. There is also testimony to show that there were two containers of urine taken, and that the amount was sufficient for two separate screenings and confirmation procedures. Additionally, Mr. Cain was afforded the opportunity to have an independent test done to negate the findings. Under these circumstances, we find no merit in his argument.
Plaintiff also contends that the chain of custody was not proven with "great care". Specifically, he argues that the specimen taken on June 25, 1996 in Metairie arrived in Atlanta at Smithkline Beecham on June 27, 1996. He asserts that no explanation was offered for the whereabouts or custody of the sample for the interim two days. We disagree. At trial Ms. Hebert testified that the samples, after being collected, sealed and labeled are sent by courier to Atlanta. There is an indication on the forms contained in the record that the specimen was sent by courier, and Ms. Hebert testified after she sealed the specimen in a bag, she locked it in the Smithkline Beecham container to await the courier. The sample was then sent by courier to Atlanta. The documentation contained in the record reflects that this was done, although the name of the courier and the time of pick-up and delivery are not disclosed on the form.
We have examined this issue in Ruddock v. Jefferson Parish Fire Civil Service Bd., 96-831 (La.App. 5 Cir. 1/28/97), 688 So.2d 112, 115 in which case we stated:
The burden of proof of the appointing authority in a civil service case (the Fire Department) is by a "preponderance of the evidence." Although the facts must be clearly established, they need not be established beyond a "reasonable doubt" as in a *1062 criminal case. The Board's findings must be based on competent evidence. Incompetent evidence will not be considered by the appellate court on review.
In a case such as this, where the only damning evidence against an employee is the results of a drug test and no corroborating evidence of substance abuse exists, the chain of custody becomes the critical issue and must be proven by the appointing authority with great care.
To satisfy this burden, the party seeking to introduce test results must first lay a proper foundation by connecting the specimen with its source, showing that it was properly labeled and preserved, properly transported for analysis, properly taken by an authorized person, and properly tested. Gaps in the chain of custody usually affect the weight of the evidence, not its admissibility, and an unbroken chain of custody is not essential for the admissibility of the evidence as long as the foundation shows that it is more probable than not ("a preponderance") that the evidence tested was that which was originally taken.
(Citations omitted, emphasis added)
The chain of custody rule does not require that every person associated with the procedure be identified, only that safeguards be instituted to insure the integrity of the evidence. Brasseaux v. Louisiana, State Racing Commission, 577 So.2d 324, 328 (La. App. 4 Cir.1991), writ denied, 580 So.2d 670 (La.1991); George v. Department of Fire, 93-2421 (La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1107. Under the circumstances of this case, we believe the appointing authority met its burden of proof on the chain of custody with regard to the specimens taken from Mr. Cain in this matter, and they were properly considered by the Board. We further find no manifest error in the Board's decision to uphold the decision of the Appointing Authority to terminate plaintiff's employment.
For the foregoing reasons, the decision of the Board is affirmed.
AFFIRMED.
NOTES
[1] There were actually two stated reasons for termination; the positive drug test results, and unexcused absence from work. However, since the Board found no evidence of the latter, its decision was based solely on the drug test.