614 S.E.2d 642

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Respondent,

v.

Kimberly COCHRAN, Appellant.

Re Tyler Dane Cochran, a minor child
under the age of eighteen.

No. 25997.

Supreme Court of South Carolina.

Heard May 3, 2005.

Decided June 6, 2005.

Rehearing Denied July 7, 2005.

---

Kimberley Elizabeth Campbell, of Patrick Law Firm, L.L.C., of Surfside Beach, for Appellant.

Celeste Moore, of South Carolina Department of Social Services, of Columbia, for Respondent.

Melissa Meyers Frazier, of N. Myrtle Beach, for Guardian Ad Litem.

Justice BURNETT:

This is an appeal from an order terminating Kimberly Cochran's (Appellant's) parental rights to her child, Tyler Dane Cochran (Child). Appellant appeals various aspects of the family court order, which was issued after we reversed and remanded the action concluding the South Carolina Department of Social Services (DSS) failed to establish the chain of custody of two drug tests. *South Carolina Dept. of Social Services v. Cochran*, 356 S.C. 413, 589 S.E.2d 753 (2003). We affirm.

## FACTUAL/PROCEDURAL BACKROUND

DSS temporarily removed Child from the home of Appellant and Bobby Cochran (Father) in August 1997 after Father had physically abused the child. Child was returned to Appellant subject to conditions imposed by the family court judge. Appellant was required to submit to drug testing, seek drug treatment, and complete parenting and marriage counseling. If Appellant tested positive for drugs, Child would immediately be removed from her custody. Appellant, thereafter, tested positive for cocaine, and DSS took custody of Child in November 1997.

A permanency planning hearing took place on July 30, 1998. The family court judge concluded DSS would retain custody of Child and could proceed to terminate the parental rights of both Appellant and Father. The family court terminated Appellant's parental rights based on the following grounds: 1)

pursuant to S.C.Code Ann. § 20–7–1572(2) (Supp.2004), Appellant had failed to remedy or rehabilitate the situation which caused the initial removal of Child; 2) pursuant to S.C.Code Ann. § 20–7–1572(6) (Supp.2004), Appellant had a diagnosed drug addiction, which prevented her from providing minimally acceptable care for Child; 3) pursuant to S.C.Code Ann. § 20–7–1572(8) (Supp.2004), Child had been in foster care for fifteen of the previous twenty-two months; and 4) termination was in the best interest of the child.

In the first appeal, we concluded the family court erred in determining DSS had established a proper chain of custody for Appellant's blood samples used for drug testing in May and June of 2000. We concluded the scope of Appellant's drug addiction was unclear because DSS did not establish a proper chain of custody for key evidence to support the allegation Appellant failed the May and June blood tests. We reversed and remanded the case to the trial court with leave to open the record and receive any other evidence pertinent to a determination of whether Appellant had overcome her drug addiction and to provide DSS the opportunity to present a proper chain of custody for Appellant's blood samples.

On remand, the trial court terminated Appellant's parental rights based on the following grounds: 1) Appellant failed to remedy the conditions which caused the removal of Child as required by S.C.Code Ann. § 20–7–1572(2) (Supp.2004) and 2) Appellant has a diagnosable condition of drug addiction pursuant to S.C.Code Ann. § 20–7–1572(6) (Supp.2004) and this condition makes Appellant unlikely to provide minimally acceptable care for Child. In so holding, the trial court determined DSS established the chain of custody required for the May and June 2000 drug tests.

## ISSUES

I.   Did the trial court abuse its discretion in determining DSS established the chain of custody for the May and June 2000 blood samples?

II.  Did the trial court err in terminating Appellant's parental rights on the ground she had a diagnosable condition of drug addiction making her unlikely to provide minimally acceptable care for Child?

III. Did the trial court err in terminating Appellant's parental rights on the ground she failed to remedy the conditions which led to Child's removal?

## STANDARD OF REVIEW

██ The family court will terminate parental rights and free a child for adoption if it finds one of the nine statutory grounds for termination has been met and that "termination is in the best interest of the child." S.C.Code Ann. § 20–7–1578 (Supp.2004). The family court judge terminated Appellant's parental rights pursuant to two statutory grounds. S.C.Code Ann. §§ 20–7–1572(2) and (6) (Supp.2004). DSS must prove these grounds by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Richland County v. Earles*, 330 S.C. 24, 496 S.E.2d 864 (1998). When reviewing the family court decision, this Court may make its own conclusions of whether DSS proved by clear and convincing evidence that parental rights should be terminated. *South Carolina Dep't of Social Services v. Broome*, 307 S.C. 48, 413 S.E.2d 835 (1992).

## LAW/ANALYSIS

██ The termination of the legal relationship between natural parents and a child presents one the most difficult issues this Court is called upon to decide. We exercise great caution in reviewing termination proceedings and will conclude termination is proper only when the evidence clearly and convincingly mandates such a result.

██ In cases involving the termination of parental rights, there exist two, often competing, interests: those of the parents and those of the child. Parents have a fundamental interest in the care, custody, and management of their children. Parental rights warrant vigilant protection under the law and due process mandates a fundamentally fair procedure when the state seeks to terminate the parent-child relationship. However, a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care. In balancing these interests, the best interest of the child is paramount to that of

the parent. *South Carolina Dep't of Social Services v. Vanderhorst,* 287 S.C. 554, 340 S.E.2d 149 (1986).

Recognizing the termination of parental rights to be one of most severe actions a state can take against its citizens, we turn to the issues presented in determining whether it is in the best interest of Child that all legal relations with Appellant be terminated.

## *I.*

### (Chain of Custody)

■■ Appellant argues the trial court erred in determining DSS established a proper chain of custody with respect to the May 1, 2000 sample and the June 7, 2000 sample.

DSS has the burden to establish a chain of custody for the blood samples "as far as practicable." *State v. Williams,* 297 S.C. 290, 376 S.E.2d 773 (1989). We have explained:

> [T]he party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing from the time the specimen is taken from the human body to the final custodian by whom it is analyzed. Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.

*Benton v. Pellum,* 232 S.C. 26, 33–34, 100 S.E.2d 534, 537 (1957) (cited in *Raino v. Goodyear Tire and Rubber Co.,* 309 S.C. 255, 258, 422 S.E.2d 98, 99–100 (1992)).

The two samples in question were tested at a North Carolina testing facility of Laboratory Corporation of America (LabCorp). In the first trial, DSS presented only the telephonic deposition of Steven Ivey, an employee of LabCorp. Ivey testified generally as to who would have handled the samples and how the testing of the samples would have occurred. He also testified he did not handle the samples, nor did he know which employee handled them. We concluded Ivey's testimony was insufficient to establish the chain of custody recognizing that while the chain of custody DSS is required to establish need not be perfect, Ivey presented no

direct evidence of how those specific blood samples were processed. *Cochran,* 356 S.C. at 419, 589 S.E.2d at 756.

In the second trial, from which this appeal is taken, DSS presented additional testimony of the chain of custody for the two samples. On appeal, Appellant's primary contention is DSS did not establish the chain of custody because the person who drew blood and sealed the containers did not testify, nor did the persons to whom the samples were delivered. Additionally, the identity of the courier who transported the samples from the collecting site to the testing facility is unknown. We conclude the absence of testimony from these persons and the unknown identity of the courier fails to render the chain of custody incomplete.

All witnesses who testified they handled and tested the blood identified their signatures on the chain of custody sheets and described their respective procedure for handling it and the testing performed. The witnesses testified the samples would have each been taken from the collecting site in a sealed package to the laboratory in Research Trial Park by a Lab-Corp courier who made daily pick-ups and deliveries. The chain of custody form and the witnesses testimony indicate the two samples were delivered to a Jackie Johnson and a Corey Sweeney, respectively. Johnson and Sweeney were no longer employed by LabCorp and not available as witnesses.

According to the May 1 Specimen Security System/Chain of Custody Request Form, Jackie Johnson received the sample from the courier on May 2, 2000. Johnson signed the form which stated "rec'd from the courier/seals intact/aliquot transferred to temporary storage." The form was also signed by Kathy Kejales, the LabCorp phlebotomist who drew the blood, Jackie Johnson, and Appellant. Kejales was no longer employed at the collection site and could not be located to testify. The June 7, 2000 sample arrived at LabCorp on June 8, 2000. The sample was received from the courier by Corey Sweeney. The Specimen Security System/Chain of Custody Request Form was also signed by Kathy Kejales, Sweeney, and Appellant.

We have consistently held complete chain of evidence must be established as far as practicable, tracing possession from the time the specimen is taken from the human body to the

final custodian by whom it is analyzed. *State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001). However, we have never held the chain of custody rule requires every person associated with the procedure be available to testify or identified personally, depending on the facts of the case. In this case, every person who handled the blood samples has been identified, except the courier who transported the samples from the collection site to the testing facility.

The testimony presented by DSS indicates the blood samples were secure when Kejales took the samples at the collection site. The testimony also indicates the samples arrived at the testing facility sealed and intact. Additionally, each person involved in the actual testing procedure once the samples arrived at the facility, testified as to their handling of each respective sample and the chain of custody. Generally, we will uphold the chain of custody if the safeguards instituted ensure the integrity of the evidence, even if every person associated with the procedure is not personally identified.[1] Other courts are in accord.

In *Logan v. Personnel Bd. of Jefferson County*, 657 So.2d 1125 (Ala.Civ.App.1995) the Alabama Court of Appeals upheld the chain of custody even though the courier who transported the sample from the collection site was neither named, nor identified, other than as "courier." In *Logan*, as in the present case, the individual collecting the sample executed the chain of custody document verifying the specimen had been received by the donor. In *Logan*, the Director of Toxicology at Roche Biomedical Laboratories testified about the drug testing procedures. He testified the sample was delivered by the lab's courier and the person who received the sample indicated by her signature on the form the seals were intact and there was no sign of tampering. The Alabama court stated:

> The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a *reasonable probability* that the item

---

1. Whether the chain of custody has been established as far as practicable clearly depends on the unique factual circumstances of each case. Our holding is not intended to suggest the nonsensical result that, in every case in which a courier is unidentified, the chain of custody is necessarily established.

is the same as, and not substantially different from, the object as it existed at the beginning of the chain. *Id.* at 1127. *See also Cain v. Jefferson Parish Dept. of Fleet Management,* 701 So.2d 1059 (La.Ct.App.1997) (chain of custody established although name of courier at time of pick-up and delivery was not disclosed on the form); *In the Matter of Lalama,* 343 N.J.Super. 560, 779 A.2d 444 (App. Div.2001) (even though courier failed to complete transmittal forms, the integrity of the sample was demonstrated by other compelling evidence); *Lucas v. Voirol,* 136 S.W.3d 477 (Ky.Ct.App.2004) (upholding routine procedure by which correction officers place samples into locked boxed until couriers, even if not personally identified, retrieve them for delivery to the lab).

Similarly, we have held proof of chain of custody need not negate all possibility of tampering so long as the chain of possession is complete. *Williams,* 297 S.C. at 293, 376 S.E.2d at 774. For the foregoing reasons, we conclude, under the facts of this case, DSS has sustained its burden of establishing the chain of custody.

## II.

### (Diagnosable Condition of Drug Addiction)

The trial court terminated Appellant's parental rights, in part, pursuant to S.C.Code Ann. § 20–7–1572(6) (Supp.2004) because she has a diagnosable condition of drug addiction. We have concluded DSS established the chain of custody for the May and June samples and affirmed the decision of the trial court to terminate Appellant's parental rights based on a diagnosable condition of drug addiction. The scope of Appellant's drug addiction is clear because DSS established the proper chain of custody for the evidence supporting its allegation Appellant failed these two drug tests. We conclude this drug evidence has now been properly authenticated and affirm.

## III.

### (Failure to Remedy Conditions)

The family court also terminated Appellant's parental rights on grounds Appellant failed to remedy the conditions

which caused the removal of Child pursuant to S.C.Code Ann. § 20–7–1572(2). We affirm.

Appellant has not remedied the conditions for removal because 1) the evidence does not indicate she has been rehabilitated and 2) Appellant's relationship with Bobby Cochran is ongoing and not in the best interest of Child.

When asked by the Guardian Ad Litem whether she had any evidence of her current sobriety, Appellant responded she did not. Appellant admitted that prior to the termination of parental rights (TPR) hearing, she had been in and out of drug treatment programs on five different occasions but had completed a session of alcohol and drug abuse counseling. Appellant stated she has not attended any drug counseling sessions or treatment programs since the TPR hearing.

Second, Appellant continued to live with Bobby Cochran at the time of the remand hearing. Appellant admitted she had been advised by a counselor to leave Cochran because she stood a good chance of relapsing if she stayed with him. There is also evidence indicating Bobby Cochran is a drug user. According to a Petition for an Order of Protection Appellant filed against him in March 1994, Appellant caught Bobby "shooting drugs" while he was "with another woman" in their mobile home.

There is also evidence indicating Appellant abuses alcohol. Although she stated she "never drank alcohol," this statement was refuted by Officer Brown of the Horry County Police Department. Brown testified he went to the Cochran home on February 16, 2004, to respond to a domestic dispute call. He testified both Appellant and Bobby Cochran "appeared to be intoxicated."

Appellant's relationship with Bobby Cochran is clearly detrimental to Child's best interests. DSS temporarily removed Child in August 1997 after discovering Bobby Cochran had physically abused Child. The couple has a history of domestic violence. When Child was in their custody, Appellant pulled a knife on Bobby Cochran at Child's first birthday party at a Burger King restaurant.

The marital problems continued at the time of the May 2004 hearing. When asked how many times law enforcement had

been summoned to her home, Appellant replied "maybe once a year." In 2003, Appellant was arrested for criminal domestic violence (CDV) against Bobby. On February 16, 2004, Appellant was again arrested for CDV.

It is not in the best interest of Child to be returned to an environment where Appellant has failed to show she has recovered from her drug addiction and domestic violence is persistent. The fundamental purpose of terminating parental rights is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for the physical, emotional, and mental needs of the child. Appellant has proven unable to provide a secure, stable, and adequate environment for rearing a child. We, therefore, affirm the decision to terminate Appellant's parental rights.

## CONCLUSION

For the foregoing reasons, we conclude DSS established the chain of custody for the two drug samples and affirm the family court's decision to terminate Appellant's parental rights pursuant to S.C.Code Ann. § 20–7–1572(2) and (6).

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.