THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
SCDSS, Respondent,
v.
Wanda McKinley, Jeffrey McKinley and Robert Chappell (deceased), Defendants, of whom Wanda McKinley is the,
Appellant.
In the interest of:  
Travis Tabias Martin, DOB: 7/10/90
Antrai Lama Martin, DOB: 11/12/92
Doris Virginia Martin, DOB 5/2/94
Jeffrey Benjamin McKinley, DOB: 11/24/00
Sallie Amanda McKinley, DOB 10/8/98
 
 
 

Appeal From Greenville County
 R. Kinard Johnson, Jr., Family Court Judge

Unpublished Opinion No. 2006-UP-286
Submitted June 1, 2006  Filed June 19, 2006   

REVERSED AND REMANDED

 
 
 
Jeffrey Falkner Wilkes, of Greenville, for Appellant.
Danielle Metoyer Mitchell, of Greenville, for Respondent.
Ann Shipman Miner, for Guardian Ad Litem.
 
 
 

PER CURIAM:  This is an appeal from a termination of parental rights (TPR) action.  DSS sought to terminate Mothers parental rights on several grounds based on Mothers drug use, as evidenced by positive drug test results.  Mother argues the drug tests were unreliable; therefore, the South Carolina Department of Social Services (DSS) did not prove the grounds for termination by clear and convincing evidence.  Mother also contends TPR is not in the childrens best interests.  We reverse and remand.[1]     
FACTS
On May 14, 2002, DSS removed Mothers five children from her custody.  After a merits hearing on October 22, 2002, the family court made a finding of threat of harm of physical abuse and a threat of physical neglect by Mother as to all of the children.  The family court also adopted and incorporated the treatment plan DSS formulated for Mother, which required her to submit to random hair strand drug tests, discontinue her use of illegal drugs and alcohol, and secure and maintain appropriate housing.  
On October 13, 2004, DSS initiated the current termination of parental rights action, alleging sections 20-15-1572(1), (2), (6), and (8) as grounds for termination.  A hearing was held on March 31, 2005. The parties stipulated to the fact the children had been in DSS custody for the past fifteen of the most recent twenty-two months.  DSS presented evidence that Mother had a long history of drug abuse dating back to the mid 1990s and had participated in inpatient and outpatient drug treatment programs, but had relapsed each time.  DSS proffered drug screen results showing Mother tested positive for cocaine eleven times since the children entered foster care and had tested positive as recently as October 2004.  Additionally, all of the DSS case workers and the guardian ad litem testified TPR was in the childrens best interests.  
Mother presented evidence that she made great strides educationally and vocationally while the children were in foster care.  Mother successfully completed a program at Greenville Technical College and was working at Greenville Memorial Hospital as a unit secretary.  Mother was taking additional classes at Greenville Technical College so that she could be certified as a medical assistant and receive a significant pay raise.  She also had a part-time job cleaning the vice president and professors offices at Greenville Technical College, and she was entrusted with a key to the building.  In regard to housing, Mother lived in a one bedroom apartment and made arrangements to move into a larger one if she regained custody of her children.  She also visited with the children and paid child support on a regular basis.  
Mother admitted to using illegal drugs in the past but asserted that she had been drug free since July 21, 2003.  Mother argued the drug tests were unreliable because the results of her drug screens were inconsistent.  Jenkins, the only witness who testified for DSS regarding the test results administered under DSS supervision, stated that the test result patterns were odd and sometimes conflicted with one another.  Additionally, Mothers case manager at Share Homeless Services[2], Melinda Seigler, testified Mother was required to undergo regular urine drug screens as a prerequisite for participating in the program.  Seigler stated Mother underwent testing at least once every other week and had not tested positive since she entered the program in February 2004.  Steigler also noted after Mother tested positive for cocaine in a DSS administered test in July 2004, Share required Mother to undergo a hair strand drug test at its expense, and she tested negative.  
Sharon Wilson also testified on Mothers behalf.  Wilson met Mother through her work with an outreach ministry organization, and had become very close to her.  Wilson testified that she does not believe Mother is currently using drugs or alcohol, that Mother attends church on a regular basis, and that she believed Mother would do what she was supposed to do if the children were returned to her.  She also stated that Mother joined the ministry and was working with abused women.  
Although the family court commended Mothers progress, it found that clear and convincing evidence existed to terminate Mothers parental rights on all four grounds.  Mother made a motion to alter or amend the judgment, and the family court denied the motion.  This appeal follows.  
STANDARD OF REVIEW
In a termination of parental rights case, the best interests of the children are the paramount consideration.  South Carolina Dept of Soc. Servs v. Smith, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000). Grounds for TPR must be proved by clear and convincing evidence.  Hooper v. Rockwell, 334 S.C. 281, 297, 513 S.E.2d 358, 366 (1999).  Furthermore, this Court may make its own conclusions of whether DSS proved by clear and convincing evidence that parental rights should be terminated.  South Carolina Dept of Soc. Servs. v. Cochran, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005).

 LAW/ANALYSIS
1.     Grounds for Termination of Parental Rights 
Mother argues the trial court erred in granting TPR because DSS failed to prove the statutory grounds.  Mother asserts the family court terminated her parental rights based on DSSs allegation that she continued to use drugs, which DSS failed to prove by clear and convincing evidence.  We agree. 
The termination of parental rights is governed by section 20-7-1572 of the South Carolina Code Annotated (Supp. 2005).  Pursuant to that section, parental rights may be terminated upon a showing of one or more enumerated grounds and a finding the termination is in the best interests of the child.  Here, the family court found the following statutory grounds applied to Mother and her children:

(1) The child or another child in the home has been harmed as defined in Section 20‑7‑490, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months.  In determining the likelihood that the home can be made safe, the parents previous abuse or neglect of the child or another child in the home may be considered; 
(2) The child has been removed from the parent pursuant to Section 20‑7‑610 or Section 20‑7‑736, has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between the department and the parent, and the parent has not remedied the conditions which caused the removal; 
(6) The parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, alcohol or drug addiction, mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child. It is presumed that the parents condition is unlikely to change within a reasonable time upon proof that the parent has been required by the department or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully or has refused at two or more separate meetings with the department to participate in a treatment program; 

S.C. Code Ann. § 20-7-1572 (Supp. 2005).
Other than the evidence DSS presented to show Mother continues to use illegal drugs, the record shows Mother did everything possible to better herself and her living conditions to regain custody of her children.  Mother acquired adequate and stable living conditions for the children, secured two jobs in order to support the children, and completed a treatment program for drug addiction.  Therefore, it appears the family court relied on Mothers alleged drug use to terminate her parental rights.  Our review of the record indicates the conflicting and unexplainable results of the drug tests were insufficient to establish Mother was using drugs.  DSSs own witness, Jenkins, the representative from the drug screening facility that performed the tests, could not explain the results and was baffled by the inconsistency in the drug screens.  Moreover, independent tests conducted through the Share program showed Mother tested negative for drugs.  Absent clear and convincing evidence Mother was using drugs, the state failed to carry its burden in proving the grounds for TPR under § 20-7-1572(1)(2) and (6).  
Under section 20-7-1572(1), DSS is required to prove the children were harmed as defined in Section 20‑7‑490, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months.  Additionally, section 20-7-1572(2) requires DSS to show that Mother failed to remedy the conditions which caused the childrens removal.  The cause for the childrens removal from Mothers custody was that she was abusing drugs and had physically neglected the children.  As discussed above, DSS did not prove Mother was still using drugs, and Mother had acquired adequate housing prior to the trial.  Mother made arrangements to move into a larger apartment if the children were returned to her. Mother also had plans to buy a house through Shares home buying program, and Steigler, Shares representative, testified that Mother would begin the home buying process within the next month.  Mother improved her education and was working two jobs where she enjoyed positions of trust. Therefore, we find DSS failed to prove it was not reasonably likely Mothers home could be made safe within twelve months or that Mother did not remedy the conditions which caused removal.    
Furthermore, although it is undisputed Mother has a diagnosable condition under section 20-7-1572(6), DSS did not prove the condition makes the Mother unlikely to provide minimally acceptable care of the children or that Mothers condition is unlikely to change within a reasonable time. The suspect nature of the drug test results coupled with Mothers completion of a drug treatment program and obvious advancement in obtaining education, employment and housing indicates Mother has the ability and inclination to provide acceptable care for the children.
Mother next argues the trial court erred in terminating her parental rights on the ground that the children had been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months. S.C. Code Ann. § 20-7-1572(8) (Supp. 2005).  Mother argues termination on this ground absent a showing she was at fault for DSSs refusal to return the children violates her due process rights.  Mother raised this issue for the first time in a Rule 59(e) motion; therefore, we find this issue is not preserved for our review. See Patterson v. Reid, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995) (holding a party may not use a post-trial motion to raise an issue that could have been raised at trial). At trial, Mother stipulated that the children had been in foster care for fifteen of the most recent twenty-two months; therefore, we affirm the family courts finding that this ground for termination exists.  This ground alone, coupled with a finding termination is in the childs best interests is sufficient to grant TPR.  South Carolina Dept of Soc. Servs. v. Sims, 359 S.C. 601, 608, 598 S.E.2d 303, 307 (Ct. App. 2004).  However, we decline to terminate Mothers parental rights because we do not find termination is in the childrens best interests.
2.     Best Interests 
Mother argues TPR is not in the childrens best interests.  We agree.[3] 
After finding one of the grounds for termination exists, section 20-7-1572 requires a determination that the termination is in the best interests of the child.  (The family court may order the termination of parental rights upon a finding of one or more of the following grounds and a finding that termination is in the best interest of the child. . .).  Our supreme court has recognized the termination of parental rights to be one of most severe actions a state can take against its citizens.  South Carolina Dept of Soc. Servs. v. Cochran, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005).  In cases involving the termination of parental rights, the court must balance two often competing interests, those of the parent and those of the child.  Id.  In balancing these interests, the best interest of the child is paramount to that of the parent.  Id. at 626-27, 614 S.E.2d at 645.
The fundamental purpose of terminating parental rights is to provide the greatest possible protection for a child whose parents are unwilling or unable to provide adequate care for the physical and emotional needs of the child and to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life.  S.C. Code Ann. § 20-7-1560 (Supp. 2005); Cochran, 364 S.C. at 632, 614 S.E.2d at 648.  
We are cognizant that a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care.  Cochran, 364 S.C. at 626, 614 S.E.2d at 645.  However, our review of the record does not indicate that the parent-child relationship in the instant case inhibits establishing a proper home for the children.    
The record indicates the caseworkers testimony that TPR is in the childrens best interests was based on Mothers positive drug screens and her previous problems with drugs.  Teresa Jeter, a caseworker who worked directly with Mother, testified that DSS was going to return the children to Mother at one point, but decided against reunification after Mother tested positive for cocaine.  Another caseworker, Chrisite Chalmers, testified TPR was in the childrens best interest because there was no 100 percent proof Mother would not relapse again.  
The guardian ad litem, who also testified that TPR was in the childrens best interests, testified she derived her recommendation only from the drug screens and Mothers single statement that the children did not need counseling.  In her report, the guardian asserted that Mother seems to genuinely want to regain custody of her children and has shown exemplary improvement in changing her life around and becoming self sufficient with the exception of the positive drug screens.  The caseworkers and the guardian ad litems recommendation that TPR is in the childrens best interest was based on Mothers positive drug screens and her previous problems with drugs. Therefore, we weigh the caseworkers and guardians recommendation in accordance with our finding the drug evidence in this case was unreliable.  
Instead, we give deference to the testimony, by DSS caseworkers, the guardian, and Mothers witness demonstrating reunification is in the childrens best interests.  The caseworkers and the guardian testified Mother visits with the children at every opportunity and pays child support.  Additionally, a DSS caseworker testified that Mother had to intervene to help the foster parent when one of Mothers special needs children had severe behavioral episodes, and Mothers intervention had positive results.  This testimony indicates TPR would not be in the childs best interest.  Moreover, Mother made laudable efforts in turning her life around so that she could provide a secure and stable home for the children.  Seigler, who worked with Mother as part of the Share program and who had seen Mother once a week for over a year, testified that Mother is very much ready, willing, and able to take her children back and is eager to have them back in the home with her.  (R.81)  Seigler also opined that Mother has never given any indication that she is on the verge of relapsing.  Additionally, Wilson, who met Mother through an outreach program, stated that she did not believe Mother was using drugs, and she thought Mother would be a good Mom if the children were returned to her.  
Based on these facts, we find terminating Mothers parental rights would not be in the childrens best interests because the fundamental purpose of the TPR statue is not met.  There is no need to free the children for adoption and force them to wait in foster care for a suitable adoptive placement, considering they are bonded with their natural mother who is willing and able to provide adequate care for their physical and emotional needs and is capable of providing a suitable home environment.  We reverse the family courts decision to grant TPR and remand the case so that the family court can formulate a permanent plan for reunification.  Accordingly, the order of the family court is
REVERSED and REMANDED.
KITTREDGE, SHORT, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Share Homeless Services is an independent program that assists individuals in acquiring housing and by providing supportive services.  Share helped Mother acquire her education, job, and housing.  
[3]  Because we reverse on this issue, we decline to address Mothers remaining arguments.  Rule 220(c), SCACR; see also Whiteside v. Cherokee County School Dist. No. One, 311 S.C. 335, 341, 428 S.E.2d 886, 889 (1993) (holding an appellate court need not address remaining issues when the resolution of a prior issue is dispositive).