**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Susan Michelle Walters, Respondent,

v.

Courtney Ray Mitchell, Appellant.

Appellate Case No. 2022-000372

Appeal From Anderson County
Karen S. Roper, Family Court Judge

Unpublished Opinion No. 2023-UP-297
Submitted August 10, 2023 – Filed August 18, 2023

**AFFIRMED**

Gregory Samuel Forman, of Gregory S. Forman, PC, of Charleston, for Appellant.

Gwendolynn Wamble Barrett, of Barrett Mackenzie, LLC, of Greenville, for Respondent.

Todd W. Pruette, of Anderson, as the Guardian ad Litem.

**PER CURIAM:** Courtney Ray Mitchell (Father) appeals the family court's termination of his parental rights to his minor child (Child). On appeal, he argues the family court erred by finding (1) he had a diagnosable condition that made it

unlikely he could provide minimally acceptable care for Child; (2) he willfully failed to support Child; (3) termination of parental rights (TPR) was in Child's best interest; and (4) he was not entitled to attorney's fees. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).

> [D]e novo review allows an appellate court to make its own findings of fact; however, this standard does not abrogate two long-standing principles still recognized by our courts during the de novo review process: (1) a trial judge is in a superior position to assess witness credibility, and (2) an appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial judge.

*Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018).

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2022). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

1. We hold clear and convincing evidence showed Father had a diagnosable condition that was unlikely to change within a reasonable time and made him unlikely to provide minimally acceptable care for Child. *See* § 63-7-2570(6)(a) (providing a statutory ground for TPR is met when "[t]he following circumstances exist, subject to the requirements set forth in [s]ection 63-21-20 [of the South Carolina Code (Supp. 2022)]: (i) the parent has a diagnosable condition unlikely to change within a reasonable time . . . ; and (ii) the condition makes the parent unlikely to provide minimally acceptable care of the child"). Father and Susan Walters (Mother) separated in 2013 after Father accosted Mother and Child while brandishing a firearm; Father has not seen Child since 2014. Father had several mental health diagnoses, including bipolar disorder and post-traumatic stress disorder. In the fifteen years preceding the TPR hearing, Father suffered multiple psychotic episodes in which he became violent and delusional; served six years in prison for intimidation of a witness; and spent months at a time in mental health facilities. At the TPR hearing, Father made conflicting statements regarding his compliance with taking his prescribed medications, but he admitted he was not fully compliant until 2013 at the earliest.

Dr. Edwin Watson, Mother's expert witness, testified establishing a relationship with Father would be dangerous to Child given Child's special needs and Father's history of instability and psychotic episodes, during which Father became a threat to himself and to others. Dr. Patrick Mullen, Father's own expert witness, who had personally observed Father one month before the TPR hearing, was unsure whether Father would ever be able to provide minimal care for Child. Dr. Mullen opined Father's mental health remained "somewhat fragile" to the point that "any kind of pressure" could cause Father to become psychotic. He also testified stress would "wreck" Father, and he agreed caring for a child with special needs would be stress-inducing.

Further, at the TPR hearing, Father remained hesitant to acknowledge Child's special needs, noting that although Mother wrote him letters about Child while he was incarcerated, he was "not sure" whether Child had such needs and had never received records of any diagnoses. Accordingly, we hold the uncontroverted testimony regarding Father's mental health diagnoses and his extensive history of violent behavior, coupled with Child's special needs and Father's inability to appreciate the extent of these needs, are clear and convincing evidence that supports this ground. *See S.C. Dep't of Soc. Servs. v. Seegars*, 367 S.C. 623, 633, 627 S.E.2d 718, 723 (2006) (concluding clear and convincing evidence showed Mother, who was diagnosed with schizotypal personality disorder, had a diagnosable condition that was unlikely to change within a reasonable time and made her unlikely to provide minimally acceptable care of her children when the evidence showed Mother denied the severity of her son's special needs; had failed to maintain stable employment, housing, and transportation; and had difficulty dealing with practical matters).

2. We hold clear and convincing evidence showed Father willfully failed to support Child. *See* § 63-7-2570(4) (providing a statutory ground for TPR is met when a "child has lived outside the home of either parent for a period of six months, and during that time the parent has wil[l]fully failed to support the child"). Father admitted he had not provided any support from 2013 until February of 2021. Although he contends his family members gave Mother monetary support, and Mother testified Father's mother gave her money sporadically, the record does not show Father directed his family to give Mother any form of support during this time period.

Moreover, we find Father's failure to support Child was willful. *See* § 63-7-2570(4) ("The court may consider all relevant circumstances in determining

whether or not the parent has wi[l]lfully failed to support the child, including . . . the ability of the parent to provide support.").  Father insisted he could not afford to send support for Child during his six-year incarceration; however, he testified that during this same time period, he bought items from the canteen, made daily phone calls, and purchased seasonal boxes—which generally cost around $200—with money his mother and grandfather deposited into his prison account.  *See Parker*, 336 S.C. at 258, 519 S.E.2d at 356 (finding a father willfully failed to support his child when he earned between $30 and $35 per month while incarcerated and spent money on cigarettes and personal hygiene products).  Further, Father testified that following his release from prison, he worked at a Styrofoam company from September to November of 2019 and at BorgWarner for three months in 2020.  Accordingly, we hold clear and convincing evidence showed Father willfully failed to support Child.

3.  We also hold TPR is in Child's best interest.  *See S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005) ("Parental rights warrant vigilant protection under the law and due process mandates a fundamentally fair procedure when the state seeks to terminate the parent-child relationship."); *id.* ("However, a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care."); *id.* at 626-27, 614 S.E.2d at 645 ("In balancing these interests, the best interest of the child is paramount to that of the parent."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate.").  Since 2014, the only contact Father and Child have had has been a short phone call every other Sunday.  Mother testified Child does not remember Father, does not connect the voice he hears on the phone every other week to his biological father, and has expressed to others that he does not have a father.  Both Mother's and Father's experts characterized Father's mental health as, at best, "somewhat fragile," and testified stress could send Father into another psychotic episode.  Moreover, Father does not appear to have a grasp on Child's special needs or how his own mental health issues could affect a child who is sensitive to the smallest disruption in his life.  Therefore, we hold TPR is in Child's best interest.[1]

---

[1] Father argues this court should award him attorney's fees if it reverses the family court.  Because we affirm the family court's grant of TPR, we need not address whether an award of attorney's fees is appropriate.

**AFFIRMED.**[2]

**MCDONALD and VINSON, JJ., and BROMELL HOLMES, A.J., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.