589 S.E.2d 753

**SOUTH CAROLINA DEPT. OF SOCIAL SERVICES, Respondent,**

**v.**

**Kimberly Cochran and Bobby COCHRAN, Defendants,**

**of Whom Kimberly Cochran is the Appellant.**

**In The Interest of Tyler Dane Cochran, DOB: 8–30–93 Minor child under the age of 18 years.**

**No. 25753.**

Supreme Court of South Carolina.

Heard May 28, 2003.
Decided Nov. 24, 2003.

414

Kimberley Elizabeth Campbell, of Patrick Chandler & Campbell, of Surfside Beach, for appellant.

Celeste Moore, of the Department of Social Services, of Columbia, for respondent.

Melissa Meyers Frazier, of Law Offices of Walter J. Wylie, of N. Myrtle Beach, for Guardian Ad Litem.

Chief Justice TOAL:

Kimberly Cochran ("mother") appeals the family court's decision to terminate her parental rights of her child, Tyler Dane Cochran ("child").

### FACTUAL/PROCEDURAL BACKGROUND

The Department of Social Services ("DSS") temporarily removed child from the home of mother and Bobby Cochran ("father") in August 1997 after discovering that father had physically abused the child.[1]  Child was returned to mother (mother and father were separated at this time) subject to conditions that the family court judge set forth at a merits hearing.  Both mother and father had to submit to drug testing, mother had to seek drug treatment, and they had to complete a parenting skills program and a marriage counseling program.  If mother failed a drug test, child would immediately be removed from her custody.  Mother tested positive for cocaine shortly thereafter, and DSS regained custody of child in November 1997.

A permanency planning hearing took place on July 30, 1998, and the judge concluded that DSS should retain custody of the child and that DSS could proceed to terminate mother and father's parental rights to the child.  The following is a list of some of the events that transpired between the initial merits hearing and the termination of parental rights hearing, which was heard on July 20 and August 21, 2000 respectively:

1.  Child was 4 years old when initially placed in protective custody, and he could not eat with silverware; he only spoke in one or two word phrases; he wet his bed and was not potty trained; and he had problems walking properly.

2.  Mother and father attended regular meetings with a marriage and family therapist, Dr. Harold Heidt ("Dr. Heidt"), for almost a year.  The visitations stopped in May 1999, and mother and father returned to have therapy from February to July 2000 at their own expense.  Dr. Heidt testified that as of May 1999, he was

---

1.  Father spanked the child hard enough to leave his handprint on the child.

close to recommending that the child be reunited with the parents, but as of the time that he testified, in July 2000, he would have needed to have many more sessions with the parents to determine if the child should return to the parents' home.

3. Mother and father successfully completed the parenting skills program twice at Waccamaw Mental Health Center. Father would walk 2½ hours to the class.

4. Mother initially was asked to give urine samples for testing for drugs, but after some problems arose, she was asked to take blood tests. Mother testified that she tested positive on five occasions.

The trial court determined that mother and father's parental rights should be terminated based on the following grounds: 1) that pursuant to S.C.Code Ann. § 20–7–1572(2) (Supp.2000), mother and father failed to remedy or rehabilitate the situation which caused the initial removal of child; 2) that pursuant to S.C.Code Ann. § 20–7–1572(6) (Supp.2000), mother had a diagnosed drug addiction, which prevented her from providing minimally acceptable care for the child; 3) that pursuant to S.C.Code Ann. § 20–7–1572(8) (Supp.2000), the child had been in foster care for 15 of the previous 22 months; and 4) that termination was in the best interest of the child.

Mother appeals the family court determination and raises the following issues on appeal:

I. Did the family court err in admitting evidence of drug test results from blood samples taken from mother in May and June of 2000?

II. Did the family court err in terminating mother's parental rights because she failed to remedy or rehabilitate the situation that caused the initial removal of child, S.C.Code Ann. § 20–7–1572(2), or because she had a diagnosable condition that made it unlikely that she could provide minimally acceptable care for the child, S.C.Code Ann. § 20–7–1572(6)?

III. Does the termination of mother's parental rights based on § 20–7–1572(8) violate her due process rights?

LAW/ANALYSIS

The family court will terminate parental rights and free a child up for adoption if it finds that one of the nine statutory grounds for termination has been met and that "termination is in the best interest of the child." S.C.Code Ann. § 20–7–1578 (Supp.2000). The family court judge terminated mother's parental rights pursuant to three statutory grounds. S.C.Code Ann. §§ 20–7–1572(2), (6), and (8). DSS must prove these grounds by clear and convincing evidence. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Richland County v. Earles,* 330 S.C. 24, 496 S.E.2d 864 (1998). When reviewing the family court decision, this Court may make its own conclusion as to whether DSS proved by clear and convincing evidence that parental rights should be terminated. *South Carolina DSS v. Brown,* 317 S.C. 332, 454 S.E.2d 335 (Ct.App.1995).

## I. Chain of Custody

Mother argues that the family court erred in concluding that DSS had established a proper chain of custody for mother's blood samples that were used for drug testing in May and June of 2000. We agree.

Although mother raises various issues on appeal,[2] in our opinion, the central issue in this case is whether mother's drug addiction is so enduring that she cannot parent her child.[3] We

---

2. Mother contests the family court's finding of the three grounds for termination and the manner in which DSS attempted to prove that she tested positive in the two most recent drug tests.

3. This issue focuses on the two grounds for termination, contained in subsections (2) and (6) of § 20–7–1572, which provide as follows:

(2) The child has been removed from the parent pursuant to Section 20–7–610 or Section 20–7–736, has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between the department and the parent, and the parent has not remedied the conditions which caused the removal;

. . .

(6) The parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, alcohol or drug addiction, mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child. It is presumed that the

find that the full picture of mother's drug addiction is unclear because DSS did not establish a proper chain of custody for key evidence that supported its allegation that mother failed two recent drug tests.

Mother presented evidence to support her contention that she was trying to overcome her drug addiction and improve her parenting skills. The merits hearing judge ordered mother to submit to drug testing, take marriage and family counseling courses, and seek drug treatment. Mother participated in all of these activities. She failed to finish the marriage counseling regimen with Dr. Heidt, but she and her husband later returned to continue the counseling with Dr. Heidt. However, the fact that she may have tested positive for drugs in May and June of 2000 would seem to suggest that despite her good intentions to become a better mother, she could not rid herself of her drug addiction. Therefore, mother's blood samples that were taken for the May and June 2000 drug tests become highly important in determining the progression of her drug addiction, and DSS must have established a proper chain of custody for those samples in order to utilize the results to request termination of mother's rights.

■ DSS has the burden to establish a chain of custody for the blood samples "as far as practicable." *State v. Williams,* 297 S.C. 290, 376 S.E.2d 773 (1989). This Court has held:

> [T]he party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed. Where the substance analyzed has passed

---

parent's condition is unlikely to change within a reasonable time upon proof that the parent has been required by the department or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully or has refused at two or more separate meetings with the department to participate in a treatment program.

Section (6) obviously addresses mother's potential drug addiction, and section (2) does as well because of the requirement of a determination of whether mother has rehabilitated or remedied the prior condition that necessitated the child's removal. In this case, the condition was drug abuse. Consequently, we will combine both grounds for purposes of this analysis.

through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.

*Benton v. Pellum,* 232 S.C. 26, 33–34, 100 S.E.2d 534, 537 (1957) (cited in *Raino v. Goodyear Tire and Rubber Co.,* 309 S.C. 255, 258, 422 S.E.2d 98, 99–100 (1992)).

■ In this case, DSS took a telephonic deposition of Steven Ivey ("Ivey"), an employee of LabCorp, which is the laboratory that tested the blood samples.[4] Ivey testified generally as to who would have handled the samples and how the testing of the samples would have occurred. However, he also testified that he did not handle the samples, nor did he know which employee handled the samples. While the chain of custody that DSS is required to establish does not have to be perfect, Ivey presented no direct evidence as to how those specific blood samples were processed. We find that Ivey's testimony does not establish the practicable chain of custody of mother's blood samples that is required by the *Williams, Pellum,* and *Raino* line of cases. This Court is unable to affirm the family court when key evidence of mother's alleged pervasive drug addiction has not been authenticated.

## CONCLUSION

We **REVERSE** the trial court and **REMAND** this case with leave to open the record to receive any other evidence pertinent to a determination as to whether mother has overcome her drug addiction and to give DSS the opportunity to present a proper chain of custody for mother's blood samples.

---

4. On the first day of trial, July 20, 2000, counsel for DSS brought the positive test results to the court's attention and requested that he be able to take an expert witness's deposition rather than bring the witness to the courtroom because of the "unreasonable" cost to bring him down from LabCorp's office in North Carolina. The trial judge granted counsel's request and instructed him to inform mother's counsel of the identity and expertise of the witness one week prior to the deposition. DSS counsel took the telephonic deposition of the expert, Steven Ivey, on August 18, 2000, the last business day before the trial resumed on August 21, 2000. DSS failed to give a week's notice to mother's counsel as to the identity of the expert and when the deposition would occur.

We leave for another day the analysis of whether section 20–7–1572(8), the 15 months out of 22 months provision, is unconstitutional.

MOORE, WALLER, BURNETT, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I agree that this matter should be reversed and remanded in light of the evidentiary error, but write separately to explain why I would not reach the constitutionality of S.C.Code Ann. § 20–7–1572(8) (Supp.2000).

The decision to terminate appellant's parental rights was based primarily on the family court judge's finding that appellant continued to use illegal drugs. While the judge found that termination was proper under § 20–7–1572(8), it is unclear to me whether he would have terminated appellant's rights for this reason alone. Although this Court may find facts on appeal in accordance with our view of the evidence, *Hooper v. Rockwell*, 334 S.C. 281, 513 S.E.2d 358 (1999), I am not willing to sever the parent-child relationship solely on the basis that the child has spent fifteen of twenty-two months in foster care where the appellant presented substantial evidence that much of the delay in the processing of this case is attributable to the acts of others.

In keeping with our well-established policy of declining to address constitutional issues unless necessary to our decision, *Morris v. Anderson County*, 349 S.C. 607, 564 S.E.2d 649 (2002), and since the family court did not rule on appellant's constitutional challenge, *Talley v. South Carolina Higher Educ. Tuition Grants Committee*, 289 S.C. 483, 347 S.E.2d 99 (1986)(issue must be raised and ruled upon to be preserved for appellate review), I would not reach the issue whether appellant's due process rights were violated by a termination predicated on § 20–7–1572(8). I concur in the majority's decision to reverse and remand this family court order.