THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Charleston County Department of Social Services, Respondent,
 v.
 Mother, Pamela N., Chris R., Telly L., and Jacob J.,[1] Defendants,
 Of whom Mother isAppellant.
 
 
 

Appeal From Charleston County
 F.P. Segars-Andrews, Family Court Judge

Unpublished Opinion No. 2007-UP-097
Submitted February 1, 2007  Filed February 23, 2007

AFFIRMED 

 
 
 
 George E. Counts and Kelvin M. Huger, both of Charleston, for Appellant.
 Frampton Durban, of North Charleston, for Respondent.
 Nancy Chiles, of Charleston, Guardian Ad Litem.
 
 
 

PER CURIAM:  Mother appeals the family courts permanency planning order, which instructed the Charleston County Department of Social Services (DSS) to institute the termination of parental rights (TPR) with respect to one of her minor children and to award custody of two of her other minor children to their respective fathers.  We affirm.
FACTS
Mother has four biological children: (1) Tevin M., born August 5, 1992; (2) J.T., born February 16, 1995; (3) D.M., born September 10, 1998; and (4) Trevon M., born January 9, 2002.  Until 2003, when Mother gave custody of J.T. to his father, she was the sole custodial parent and caregiver to all four children.  
On November 5, 2003, Mother spanked then five-year-old D.M., leaving marks and bruises on her back and legs.  As a result, DSS removed the children from Mothers custody.  D.M. has consistently maintained that Mother spanked her with the cord of an electric iron.  Mother has maintained she spanked D.M. with a belt but has admitted she struck her too hard.  Dr. Sarah Schuh, an expert in child abuse, testified that D.M.s injuries were consistent with being struck by an electric power cord rather than by a belt.
In November 2003, DSS placed the children with Mothers sister, Pamela N., with instructions that the children not be allowed any contact with Mother.  In April 2004, DSS removed the children from Pamela N.s care and took them into custody because according to DSS, Pamela N. allowed Mother to see the children on a regular basis and talk on the telephone with them once a week.  
On June 17, 2004, the family court held a merits hearing.  At the hearing, Mother consented to a finding that she abused the children.  The family court ordered D.M. and Trevon M. to remain in the custody of Charleston County DSS.  The family court further ordered that Charleston County DSS would have temporary legal custody of Tevin M., but Chris R., Tevin M.s father, would have temporary physical custody.  Additionally, the family court ordered Mother to participate in family therapy with D.M. and Tevin M. and to follow the therapists recommendations.  
As required by the June 2004 order, the family court held a judicial review hearing on July 29, 2004.  The family court ordered Jacob J., Trevon M.s father, to undergo a substance abuse evaluation.  It further ordered Mother to continue attending counseling and to complete abuse clarification with the children.  
In June 2004, Tevin M. relocated to Kentucky with his father.  The guardian ad litem (GAL) received reports from Kentucky on Tevin M.s placement and spoke to Chris R. about how Tevin M. was doing in his care.  In addition, the GAL learned that Trevon M. and his father did not have a close relationship and that Jacob J. had a substance abuse problem.  Further, Jacob J. failed to follow the court ordered treatment plan.  
D.M. did not learn the true identity of her biological father until December 2004 when DSS identified Telly L. as D.M.s father.  Telly L. was absent since D.M.s infancy; however, Telly L. and D.M. underwent counseling to help reestablish their parent-child relationship.  The GAL conducted home visits with Telly L. and observed him with D.M. in therapy sessions.  The GAL found Telly L. to be committed to D.M.  Both the GAL and the DSS caseworker recommended that he receive custody.
The family court held another judicial review hearing regarding the childrens placement on December 16, 2004.  The family court determined that legal and physical custody of D.M. and Trevon M. should remain with DSS and temporary legal and physical custody of Tevin M. should remain with Chris R.  The family court ordered: (1) Jacob J. to successfully complete a drug and alcohol treatment program; (2) Mother to successfully complete parent effectiveness training and family counseling with D.M. and Trevon M. and to cooperate with Tevin M.s therapist; and (3) Telly L. to successfully complete family counseling with D.M.  The family court ordered a permanency planning hearing to be scheduled for February 17, 2005.  
By agreement between the parties, Mother paid child support to Jevelous T. for J.T.  Mother fell behind in her support payments.  She was found in contempt of court and was placed in jail for one day.  Upon her release on December 14, 2005, Mother called Jevelous T. and left him a message saying in part, I am going to get you.  You better believe that.  Mother testified that she was angry with him, but she did not actually intend to harm him.  
On January 10, 2006, Mother mistakenly believed she had a therapy session with her therapist, Joyce Ewell.  Because Ewell was with another client, Ewell could not see Mother.  The receptionist had to call Ewell to the front desk because Mother became increasingly upset.  Mother testified she was upset because she saw D.M. only at therapy sessions; however, Mother eventually left Ewells office. 
The family court held the permanency planning hearing on January 19-20 and March 10, 2006.  The court awarded Telly L. legal and physical custody of D.M. and awarded Chris R. legal and physical custody of Tevin M.  The family court instructed DSS to initiate a TPR action for Trevon M. who was to remain in the custody of DSS.  Further, the family court ordered Mother and D.M. to continue and successfully complete family counseling and for Mother to have visitation with D.M., if approved by D.M.s therapist, DSS, and the GAL.  This appeal followed.
STANDARD OF REVIEW
On appeal from a family court order, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence.  E.D.M. v. T.A.M., 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992).  However, the family court is in a superior position to judge the witnesses demeanor and veracity, and consequently, we give its findings broad discretion.  Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).  This degree of deference is especially true in cases involving the welfare and best interests of a minor child.  Ex parte Morris, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006).  When the evidence is conflicting and susceptible of different inferences, the family court has the duty of determining not only the law of the case, but the facts as well, because it had the benefit of observing the witnesses and determining how much credence to give each ones testimony.  Anders v. Anders, 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985); see also Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996) (holding when evidence is disputed, the appellate court may adhere to the family courts findings).  
LAW/ANALYSIS
I. Change of Custody and Initiation of TPR
Mother argues the family court erred when it ordered a change in custody for D.M. and Tevin M. and permitted DSS to commence TPR with respect to Trevon M. because Mother was making solid progress towards reunification with her children.  We disagree.
When a child is placed in foster care, the family court is required to conduct a permanency planning hearing within a year of the childs placement in foster care.  S.C. Code Ann § 20-7-766(A) (Supp. 2005).  At this hearing, the family court must approve a placement plan for the child, which typically entails three options: reunification with the parents, custody or guardianship with a fit and willing relative, or termination of parental rights.  See § 20-7-766(C).  If the family court approves a different plan, it must find compelling reasons to do so, and the plan must be in the childs best interests.  Id.  
Generally, if the court determines the child should not be returned to the childs parents, DSS must file a petition to terminate parental rights within sixty days of the family courts order.  § 20-7-766(E).  However, if the child is not returned to the parents, but termination of parental rights is not in the childs best interests, the family court may award custody or legal guardianship, or both, to a suitable, fit, and willing relative or nonrelative.  §§ 20-7-766(E), 20-7-766(G).  Consequently, DSS is not required to file a petition to terminate parental rights at that time.  Id.
Additionally, if the family court cannot safely return the child to the childs parents, but there is a possibility the child may be safely returned within a reasonable time, not to exceed eighteen months, the family court can order an extension of the placement plan or may modify the plan.  See § 20-7-766(F).  However, [b]efore continuing foster care for this purpose, the court must find that, at the time of the hearing, initiation of termination of parental rights is not in the best interests of the child and that the best interests of the child will be served by the extended or modified plan.  Id.  
As set forth in section 20-7-766(C), the family court had only one viable option for D.M. and Tevin M. as well as only one available option for Trevon M.  Reuniting the children with Mother was not an alternative because Mother still had not resolved her anger problems that led to the removal of her children.  The next possible placement for the children was with their respective fathers if they were fit.  For D.M. and Tevin M., their fathers were available and found to be fit and suitable parents.  Trevon M.s father was determined not to be an appropriate placement because of substance abuse problems.  
The family court considered other relatives for placement of Trevon M.  Mothers sister, Pamela N., was unsuitable because the children had already been removed from her care.  Another of Mothers sisters, Carolyn M., and her husband, Curtis, failed to comply with earlier family court orders relating to the supervision, safety, and well-being of J.T.  The couple was to supervise Mother with J.T. during his court ordered visitation, but they allowed Mother to be alone with him.  Therefore, based on the circumstances, the family courts only remaining option for Trevon M. was to begin TPR.  
The State argues that according to section 20-7-766(F), a child cannot be returned to the childs parents if the child has been in foster care for over eighteen months.  Because the permanency planning hearing occurred after Trevon M. was in foster care for twenty-two months, DSS was required by law to institute a termination of parental rights action.  Here, the letter of the law was satisfied once Trevon M. remained in foster care greater than eighteen months.[2]  
Although, [t]he public policy of this [S]tate in child custody matters is to reunite parents and children, we have long decided all matters involving the custody or care of children in light of the fundamental principle that the controlling consideration is the best interests of the child.  Hooper v. Rockwell, 334 S.C. 281, 295-96, 513 S.E.2d 358, 366 (1999) (internal quotations omitted).  In recent years, the Legislature has placed an increasing emphasis on the best interests of the child in abuse and neglect cases.  Id. at 295, 513 S.E.2d at 366.  
Even if we disregarded section 20-7-766(F), the childrens best interests would not be served by returning them to Mother because she still has not resolved her anger management problems.  Although Mother is following the treatment plan, she has not completed it.  D.M.s and Tevin M.s best interests are served by giving their respective fathers custody.  The family court found that both fathers were fit parents and were capable of providing suitable homes.  Returning Trevon M. to his father would not be in his best interests because of his fathers substance abuse problem, and no other relatives were found to be suitable.  Therefore, TPR is the appropriate plan and in Trevon M.s best interests.
II. The GALs Recommendation 
Next, Mother contends the GALs recommendation was flawed.  She maintains the recommendation was biased and based on an incomplete investigation of the case.  We disagree. 
Section 20-7-122 of the South Carolina Code (Supp. 2005) provides the responsibilities and duties for a GAL appointed in abuse and neglect cases: 

 
 (1) represent the best interests of the child;
 (2) advocate for the welfare and rights of a child involved in an abuse or neglect proceeding;
 (3) conduct an independent assessment of the facts, the needs of the child, and the available resources within the family and community to meet those needs;
 (4) maintain accurate, written case records;
 (5) provide the family court with a written report, consistent with the rules of evidence and the rules of the court, which includes without limitation evaluation and assessment of the issues brought before the court and recommendations for the case plan, the wishes of the child, if appropriate, and subsequent disposition of the case;
 (6) monitor compliance with the orders of the family court and to make the motions necessary to enforce the orders of the court or seek judicial review;
 (7) protect and promote the best interests of the child until formally relieved of the responsibility by the family court.

In an abuse situation, the GAL is to serve as the childs advocate and to do what is in the best interests of the child.  In both situations, the GALs primary concern is the best interests of the children.  See S.C. Code Ann. §§ 20-7-122(1), 20-7-1549(A)(1) (Supp. 2005).  
In the present case, the GAL followed her statutory responsibilities and duties.  She did not have any statutory duty to perform a home visit with Mother simply because she performed visits with one of the fathers.  Because the children had never lived with their fathers, it was important to observe the fathers living situations to assess if they were suitable guardians.  The GALs opinion that Mother was not a suitable parent arose out of Mothers unresolved anger problems, not the physical condition of the home.  Because she had not resolved those problems, a home visit would not have assuaged the GALs concerns.  The GAL properly observed Mother with the children during therapy sessions.  Therefore, the GALs report was not biased or incomplete.
Further, the family court did not rely solely on the GALs report.  It considered the testimony, the case record, the supplemental report submitted by DSS, and the recommendations of the GAL in determining the permanency plan for Trevon M.  Therefore, even if the report was biased, we discern no prejudice because the record contains other ample evidence to support the findings of the family court.
III. Family Courts Reliance on Incidents Before Hearing
Finally, Mother maintains the family court erred by placing too much emphasis on two incidents occurring shortly before the hearing, namely the answering machine message and the incident at the therapists office.  Mother contends the GALs recommendation changed after the two incidents, proving the family court relied too heavily on the incidents.  We disagree.
The family court considered the testimony, case record, the supplemental report submitted by DSS, and the recommendations of the GAL in determining the permanency plan for Trevon M.  Even if we excluded these two incidents, based on our own review of the evidence, we find Mother has not resolved her anger management issues, which contributed to causing serious injury to one of the children and led to the childrens removal.  Thus, returning the children to Mother at this time would be inappropriate.
Accordingly, the family courts order is 
AFFIRMED.[3]
HUFF, BEATTY, AND WILLIAMS, JJ., concur.

[1] The names of the minor children and the respective defendants have been changed to protect the minors identities.
[2]  We note that although the letter of the law was satisfied in the present case, some instances exist when this statutory ground would not support termination of parental rights despite the childs presence in foster care for eighteen months. Cf. Charleston County Dept of Soc. Servs. v. Jackson, 368 S.C. 87, 102 n. 8, 627 S.E.2d 765, 773 n.8 (Ct. App. 2006) (holding that although TPR was statutorily permissible because child had remained in foster care greater than fifteen of the preceding twenty-two months, it was not in childs best interests to terminate the fathers rights).  Here, the hearings were rescheduled and delayed several times, which prolonged Trevon M.s stay in foster care.  Furthermore, not all of these delays were attributable to the acts of Mother.  We agree with Justice Pleicones when he stated: I am not willing to sever the parent-child relationship solely on the basis that [the statutory grounds for TPR have been met] where the [parent] presented substantial evidence that much of the delay in the processing of this case is attributable to the acts of others.  S.C. Dept of Soc. Servs. v. Cochran, 356 S.C. 413, 420, 589 S.E.2d 753, 756 (2003) (Pleicones, J., concurring).  Despite these delays, we believe the family court was correct in allowing DSS to proceed given the specific facts and circumstances surrounding this case.  
[3]  We decide this case without oral argument pursuant to Rule 215, SCACR.