678 S.E.2d 463

## SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,

v.

**JANICE C., Henry M., Willie B., George T., Stanley E., John Doe, John Roe, and John Joe, Defendants,**

**Of Whom Janice C. and Stanley E. are the Appellants.**

**In the interests of B.C., A.C., B.C., J.C., and N.C., minor children under the age of 18.**

No. 4538.

Court of Appeals of South Carolina.

Heard Jan. 22, 2009.

Decided April 30, 2009.

222

Charles Thomas Brooks, of Sumter, for Appellants.

Helen McFadden, of Kingstree, for Respondent.

LOCKEMY, J.:

This is an expedited termination of parental rights (TPR) action pursuant to section 20–7–1572 of the South Carolina

Code (Supp.2007) (current version at 63–7–2570 (Supp.2008)).[1] Janice C. (Mother) appeals the family court's order terminating her parental rights as to her five children (Children). Stanley E. (Father) appeals the family court's termination of his parental rights as to his child, N.C. We reverse the family court's TPR of Mother and affirm the family court's TPR of Father.

## FACTUAL/PROCEDURAL BACKGROUND

Mother is a mentally disabled single mother of five special needs children, ages eleven, nine, eight, seven, and four. Each child has a different father. Father is the father of Mother's youngest child, N.C.

In 2004, the Williamsburg County Department of Social Services (DSS) took Children into emergency protective custody. At the time of removal, two of the children lived with Mother and three of the children lived with their maternal grandmother (Grandmother).[2] The family court found Mother's home had no water and no electricity, and Mother was behind in her rent. Grandmother's home had no water, no stove, and weak and sagging floors. In addition, Grandmother was diabetic and had badly swollen knees. Ultimately, the family court held there was probable cause for law enforcement to take emergency protective custody of Children.

DSS developed a treatment plan for Mother and Grandmother. Mother's treatment plan required Mother to secure and maintain appropriate housing, enroll at the South Carolina Department of Disabilities and Special Needs, and complete parenting effectiveness training classes. The family court approved the treatment plan, finding Mother "made some progress toward removing the risk of harm to the minor

---

1. Effective June 16, 2008, the General Assembly amended the Code of Laws of South Carolina by adding Title 63, the South Carolina Children's Code, and transferring all provisions of Title 20, Chapter 7 to Title 63. *See* Act No. 361, 2008 S.C. Acts 3623 (stating "the transfer and reorganization of the code provisions in this act are technical . . . and are not intended to be substantive").

2. Mother's three oldest children were removed and placed with Grandmother in 2001 after Mother broke the arms of a non-relative two-year-old girl. As a result of the incident, Mother's name was entered in the South Carolina Central Registry of Child Abuse and Neglect.

children." Grandmother passed away during the course of this action.

Father began visiting and supporting his daughter, N.C., in 2006. He had little contact with N.C. prior to that time. Father informed DSS that he was unable to take N.C. because he did not have his own home. Instead, Father suggested DSS place N.C. with Father's adult daughter, Brandy. Although Brandy initially expressed an interest in N.C., Brandy later told DSS she wanted Father to take a paternity test to prove N.C. was her sister. Father refused to take a paternity test. Ultimately, DSS did not offer Father a treatment plan because his parental rights had been terminated as to other children in the past.

DSS initiated a termination of parental rights (TPR) action against Mother, Father, and several other biological fathers in January 2007. In May 2007, the family court terminated Mother's parental rights to Children after finding termination was in the best interest of Children and the following statutory grounds: (1) Children lived outside of Mother's home for six months and Mother failed to remedy the conditions that caused the removal; (2) Mother had a diagnosable condition unlikely to change within a reasonable time and the condition made Mother unlikely to provide minimally acceptable care of Children; (3) Mother neglected Children, and because of the severity or repetition of the abuse or neglect, it was not likely the home could be made safe within twelve months; and (4) Children had been in foster care for fifteen of the most recent twenty-two months.

The family court relied on the testimony of the guardian ad litem (GAL), foster care caseworker, and Mother and Father in determining that TPR was in the best interest of the Children. However, the family court noted: "There is no doubt that Janice C[.] expresses her love and concern for her children. However, she is unable to care for them. Stanley E[.] professes love and concern for his child, but will not change his living situation in order to care for the child." During the termination hearing, the GAL testified TPR was in the Children's best interest because they "need[ed] some permanency." However, GAL admitted he never visited or interviewed Mother or Children. The family court noted:

"[GAL's] opinion is that the children are best served by being freed for adoption in order to be placed in a stable home with the opportunity to meet the special needs of each child." In addition, Gloria Davis, the foster care caseworker, testified Mother failed to complete her treatment plan. Other evidence presented, however, demonstrates Mother was making progress toward completing her treatment plan and had completed all of the parenting classes. The family court's order also terminated Father's parental rights as to N.C. after finding termination was in the best interest of N.C. and the following statutory grounds: (1) Father severely neglected N.C. and it is unreasonable that the home can be made safe within twelve months; (2) Father abandoned N.C.; and (3) N.C. has been in foster care for fifteen out of the most recent twenty-two months. Mother and Father appeal.

## II. MOTHER'S APPEAL

### A. Standard of Review

Mother first argues the family court applied the incorrect standard of review. Specifically, Mother contends the family court applied the preponderance of the evidence standard in terminating her parental rights instead of the proper clear and convincing standard. We disagree.

Initially, we note the family court's order provides: "Based upon an examination of the pleadings, consideration of all of the testimony and evidence presented, and the recommendations of the guardian ad litem for the minor child, I find that the evidence presented is *clear and convincing,* and from such evidence and testimony, I make the following findings . . . ." (*emphasis* added). Based on this language, we find the family court applied the correct standard of review. Furthermore, any error was harmless because we are determining our own findings from the record as to whether clear and convincing evidence supports the termination of parental rights. *See S.C. Dep't of Soc. Servs. v. Headden,* 354 S.C. 602, 609, 582 S.E.2d 419, 423 (2003).

### B. Proofs of Service

Mother also argues the family court erred by referencing properly filed acceptances and affidavits of services in its TPR

order where the proofs of service were not entered into evidence at the hearing. We disagree.

■■■ Rule 201, SCRE, governing the taking of judicial notice, provides as follows:

(a) **Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

. . .

(f) **Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding. . . .

When a court takes judicial notice of a fact it "admit[s] into evidence and consider[s], without proof of the facts, matters of common and general knowledge." *Moss v. Aetna Life Ins. Co.,* 267 S.C. 370, 377, 228 S.E.2d 108, 112 (1976) (citation omitted). To be subjected to judicial notice, a fact must be of "such common knowledge that it is accepted by the general public without qualification or contention, or its accuracy may be ascertained by reference to readily available sources of indisputable reliability." *Bowers v. Bowers,* 349 S.C. 85, 94, 561 S.E.2d 610, 615 (Ct.App.2002) (citation omitted). Further, "a court can take judicial notice of its own records, files and proceedings for all proper purposes including facts established in its records." *Freeman v. McBee,* 280 S.C. 490, 494, 313 S.E.2d 325, 327 (Ct.App.1984).

■■■ Here, the family court took judicial notice of acceptances and affidavits of services. These documents were filed with the family court; therefore, they were part of the record. Accordingly, the family court did not err by referencing the documents in its order. Furthermore, even if this court determines the family court erred by referencing the documents, any error was harmless because Mother does not argue any party was improperly served.

## C. TPR

■■ Finally, Mother contends the family court erred by terminating her parental rights. We agree.

> The termination of the legal relationship between natural parents and a child presents one [of] the most difficult issues this Court is called upon to decide. We exercise great caution in reviewing termination proceedings and will conclude termination is proper only when the evidence clearly and convincingly mandates such a result.

*Dep't of Soc. Servs. v. Cochran,* 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005).

Procedures for TPR are governed by statute. *See* S.C.Code Ann. §§ 63–7–2510 to 2610 (Supp.2008). The purpose of the TPR statute is:

> to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life.

S.C.Code Ann. § 63–7–2510 (Supp.2008).

The family court may order TPR upon a finding of one or more of the eleven statutory grounds and a finding that TPR is in the best interest of the child. *See* S.C.Code Ann. § 63–7–2570 (Supp.2008). The TPR statute "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship." S.C.Code Ann. § 63–7–2620 (Supp.2008).

■■■ "If the family court finds that a statutory ground for [TPR] has been proven, it must then find that the best interests of the child would be served by [TPR]." *Doe v. Baby Boy Roe,* 353 S.C. 576, 580, 578 S.E.2d 733, 735 (Ct.App.2003). "In a termination of parental rights (TPR) case, the best interests of the children are the paramount consideration." *Id.* at 579, 578 S.E.2d at 735. "The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C.Code Ann. § 63–7–2620 (Supp.2008).

In this case, there is no question that at least one of the eleven statutory grounds for TPR has been met. It is undisputed Children have been in foster care since July 27, 2004 and have not lived with Mother since that date. *See* S.C.Code Ann. § 63–7–2570(8) (Supp.2008). The question of whether TPR is in Children's best interest, however, is a more difficult issue.

At the TPR hearing, Gloria Davis, a foster care caseworker, testified for DSS. She testified Mother "cares for her Children, but does not know how to parent the children." She stated Mother visited Children in foster care on a regular basis and rarely missed a visit. She also provided nonmonetary support to Children, including food items and clothing. Davis testified Children enjoyed interacting with Mother and recognized Mother as their mother. Although Davis maintained Mother failed to maintain adequate housing, Davis conceded she last visited Mother's home five months prior to the hearing and only observed the living room during that visit. Davis added Mother failed to complete her treatment plan, explaining Mother refused services from the Department of Special Needs and failed to complete parenting classes.

Other evidence presented at the hearing, however, demonstrates Mother was making progress toward completing her treatment plan. Leteesa George, of the Department of Special Needs, testified Mother recently accepted services with the Department of Special Needs. George added she was in the process of preparing Mother's intake packet to determine whether Mother was eligible for services. In addition, Vanessa Boatwright, of Consulting Concepts, testified DSS referred Mother to Consulting Concepts for parenting classes. Boatwright stated Mother completed all of the parenting classes and contributed to the classes.

Dr. Douglas Ritz, a clinical psychologist who evaluated Mother on February 9, 2007, also testified at the hearing. He testified the evaluation lasted approximately two to three hours, and Ritz did not observe Mother taking care of Children. Ritz opined Mother's "cognitive abilities came in the diagnostic category of mild mental retardation" and she functions at a second-grade level. Ultimately, he determined a

person with Mother's characteristics could not adequately parent five children without some type of live-in help.

The GAL appointed to the case in 2006 testified although Mother loves Children, visited them, and provided in-kind support, he did not feel she was capable of caring for Children and meeting their needs. He noted Mother's and Children's special needs. GAL further testified Children had been in foster care for three years and were doing well. He admitted he never visited or interviewed Mother or Children but recommended TPR because Children "need[ed] some permanency." However, he further testified that he had no objection to permanent foster care, which would allow the children to have a continuing relationship with their Mother, if no adoptive resource was available.

A primary objective of the TPR statutes is to free children for the stability adoption can provide. *See* S.C.Code Ann. § 63–7–2510 (Supp.2008). TPR would leave Children without a legal mother. Reunification may never be a possibility given Mother's limitations. However, reversing TPR will maintain Mother's parental rights and will allow Mother to continue visiting Children, while they remain in their current foster care home where they are receiving the services they need. We hesitate to grant TPR when the GAL and Dr. Ritz never observed Mother interacting with her Children. Furthermore, the record does not reflect and the GAL admitted he never visited or interviewed Mother or Children. Therefore, we do not believe the GAL "conduct[ed] an independent assessment of the facts. . . ." S.C.Code § 63–11–510 (Supp.2008). We also note a discrepancy in the GAL's testimony. Though he recommended TPR because Children need some permanency, he also recognized Mother loves her Children and has provided in-kind support.

Because Children's best interests are the paramount consideration in a TPR action, under these facts, it appears the family court erred in finding termination of Mother's parental rights was in Children's best interests. We see no harm in allowing Children to remain in their current placement, which would enable visitation between Mother and Children to continue. Moreover, the record is devoid of any evidence that suitable adoptive parents have been identified. Consequently, TPR will not provide future stability for Children. According-

ly, we believe TPR is premature at this time based on the record before the court and reverse the family court's TPR of Mother.

## III. FATHER'S APPEAL

### A. Standard of Review

Father argues the family court applied the incorrect standard of review. Mother raised this very same issue in her brief, and it is addressed above. As stated above, we affirm the family court as to this issue and find the family court applied the correct standard of review. Furthermore, any error was harmless because we are determining our own findings from the record as to whether clear and convincing evidence supports the termination of parental rights. *See S.C. Dep't of Soc. Servs. v. Headden,* 354 S.C. at 609, 582 S.E.2d at 423.

### B. Proofs of Service

Father argues the family court erred by referencing properly filed acceptances and affidavits of services in its TPR order where the proofs of service were not entered into evidence at the hearing. Father, however, does not argue any party was improperly served. This issue was raised by Mother and is addressed above. We affirm.

### C. Treatment Plan

 Father argues the family court erred by ruling DSS was not required to offer him a treatment plan. We disagree.

"If the court orders that a child be removed from the custody of the parent or guardian, the court must approve a placement plan." S.C.Code Ann. § 63–7–1680 (Supp.2008). "[T]he nature of the changes in the home and family situation that must be made to correct the problems that necessitated removal" must be included in the plan. *Id.*

Father never had custody of N.C. and has always maintained that he could not provide a home for N.C. In fact, Father did not begin visiting and supporting N.C. until she was in foster care. Furthermore, offering Father a treatment plan to reunite Father with N.C. would have been futile because Father told DSS he was unable to accept custody of N.C. because he did not have his own home.

## D. TPR

 Finally, Father contends the family court erred by terminating his parental rights. We disagree.

There is no question that at least one of the eleven statutory grounds for TPR has been met. N.C. has been in foster care since July 27, 2004 and she has never lived with Father. *See* S.C.Code Ann. § 63–7–2570(8). Additionally, because the evidence clearly and convincingly indicates TPR is in N.C.'s best interest we affirm the family court's TPR of Father.

Father lives with his girlfriend and has admitted he cannot bring N.C. into that home. Father's situation can also be distinguished from that of Mother. Evidence demonstrates Mother completed her parenting classes and rarely missed visits with her children. We find Mother's efforts to comply with her treatment plan, together with her mental handicaps distinguish her situation from Father's situation. Furthermore, Mother has maintained a relationship with her Children since their birth, whereas Father's relationship with N.C. only began in 2006. Additionally, though not outcome determinative, we find problems with Father's failure to submit to a paternity test. Accordingly, we believe terminating Father's parental rights is in N.C.'s best interest and the family court's order is therefore

**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and THOMAS, J.J., concur.