**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Janet Bright and Randy Bright, Appellants.

In the interest of minors under the age of eighteen.

Appellate Case No. 2016-000574

───────────

Appeal From Saluda County
Kelly Pope-Black, Family Court Judge

───────────

Unpublished Opinion No. 2017-UP-293
Submitted June 28, 2017 – Filed July 10, 2017

───────────

**AFFIRMED**

───────────

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellants.

Robert C. Rhoden, III, of the South Carolina Department
of Social Services, of Spartanburg, for Respondent.

Wendy Nicole Griffith, of Talley Law Firm, P.A., of
Spartanburg, for the Guardian ad Litem.

───────────

**PER CURIAM:**  Janet Bright (Mother) and Randy Bright (Father) appeal the family court's order terminating their parental rights to their minor children (Children).  The family court found clear and convincing evidence supported termination of parental rights (TPR) on the following grounds: (1) Children were harmed, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely the home could be made safe within the next twelve months; (2) Mother and Father failed to remedy the conditions that caused the removal; and (3) Mother and Father had diagnosable conditions that were unlikely to change within a reasonable time and made it unlikely they could provide minimally acceptable care for Children.  Additionally, the family court found TPR was in Children's best interest.  On appeal, Mother and Father argue the family court erred by (1) granting TPR and (2) finding the permanent plan of TPR and adoption rather than relative placement was in Children's best interest.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court that the family court erred in its findings.  *Id.* at 385, 709 S.E.2d at 652.

The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and also finding TPR is in the best interest of the child.  S.C. Code Ann. § 63-7-2570 (Supp. 2016).  The grounds for TPR must be proven by clear and convincing evidence.  *Dep't of Soc. Servs. v. Mrs. H*, 346 S.C. 329, 333, 550 S.E.2d 898, 901 (Ct. App. 2001); *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).  The TPR statute "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship."  S.C. Code Ann. § 63-7-2620 (2010).

We find clear and convincing evidence shows Mother and Father harmed Children and due to the severity or repetition of abuse or neglect, it was not reasonably likely the home could be made safe within the next twelve months.  *See* S.C. Code Ann. § 63-7-2570(1) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been

harmed . . . and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"). First, clear and convincing evidence shows Children were harmed in the home. *See* S.C. Code Ann. § 63-7-20(6)(a) (Supp. 2016) ("'[H]arm' occurs when the parent . . . engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ."). Ashton Gardner, a Department of Social Services (DSS) caseworker, testified Children were removed because of deplorable conditions in the home due to a bug infestation and a hole in the floor of the home. According to the report, Children indicated bugs crawled on them at night and Child Three had blisters on her head from being bitten by bugs. Furthermore, Gardner stated DSS was involved with Children in a treatment case from 2009 to 2010 because Mother was mixing Child Two's formula incorrectly and he was failing to thrive. Although there was no court intervention in the case, Mother and Father agreed to a finding of medical neglect.

Based on the severity and repetition of the harm, we find clear and convincing evidence shows it was not reasonably likely the home could be made safe for Children within twelve months. Cassandra Norris, an employee at Hopes Center for Children, testified she administered fifteen in-home parenting classes to Mother and Father, and she did not believe they retained the information from the classes. During Father's testimony, he had trouble remembering what he learned during parenting classes. Dr. William Haxton, a forensic psychologist, evaluated Mother and Father. He testified Mother could not care for Children without constant supervision, and he believed Father was unable to care for Children because he could not identify problems when they occurred. Despite Mother being unable to care for Children, Father testified he intended for Mother to be the primary caretaker of Children while he was working. Therefore, we find the history of habitual neglect of Children and the testimony Mother and Father could not provide adequate care of Children supports this statutory ground for TPR.

We also find clear and convincing evidence shows Mother and Father failed to remedy the conditions that caused the removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2016) (stating a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent and the parent has not remedied the conditions which caused the removal"). Although Mother and Father repaired the conditions of the home, they have been unable to make the behavioral changes necessary to care for Children. Norris indicated Mother and Father completed five extra parenting classes because they were not retaining the information from the

classes. She testified they received completion certificates because she was required to give one to anyone who completed ten classes. However, she did not believe they retained the information from the classes. Gardner also testified she did not believe Mother and Father made any behavioral changes. *See S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 54, 413 S.E.2d 835, 839 (1992) ("[A]n attempt to remedy alone is [not] adequate to preserve [parental] rights. The attempt must have, in fact remedied the conditions." (quoting *Dep't. of Soc. Servs. v. Pritchett*, 296 S.C. 517, 520, 374 S.E.2d 500, 501 (Ct. App. 1988))). Furthermore, Mother did not complete her placement plan because she did not follow through with recommendations from Dr. Haxton to take medication for depression and complete vocational rehabilitation. Therefore, because of Mother's and Father's failure to make behavioral changes, we find clear and convincing evidence supports this statutory ground for TPR.

Additionally, we find clear and convincing evidence shows Mother and Father have diagnosable conditions that make it unlikely they will be able to provide minimally acceptable care of Children. *See* S.C. Code Ann. § 63-7-2570(6) (Supp. 2016) (stating a ground for TPR is met when a "parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, . . . mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child"). Dr. Haxton indicated Mother functioned in the mild range of intellectual disability and diagnosed her with major depressive disorder and an unspecified anxiety disorder. Dr. Haxton testified Mother's mental deficiency required her to have constant supervision in maintaining the household and looking after Children. Furthermore, Dr. Haxton indicated Father functioned within the borderline range of intellectual functioning. He testified he was concerned with Father's ability to recognize serious problems and indicated Father had trouble in the past telling Mother when something was wrong with Children, such as when Mother was mixing Child Two's formula incorrectly. Dr. Haxton did not believe Mother and Father would be able to care for Children unless someone supervised their daily activities. Therefore, because Mother and Father are unable to care for Children without supervision, we find clear and convincing evidence supports this ground for TPR. *See S.C. Dep't of Soc. Servs. v. Janice C.*, 383 S.C. 221, 229-30, 678 S.E.2d 463, 468 (finding a diagnosable condition existed that made it unlikely a mother could provide minimally adequate care for her children when a psychologist opined "a person with [her] characteristics could not adequately parent five children without some type of live-in help").

We also find TPR is in Children's best interest. In a TPR case, the best interest of the child is the paramount consideration. *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000). "The interests of the child shall prevail if the child's interest and the parental rights conflict." § 63-7-2620. "The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] whe[n] children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ." S.C. Code Ann. § 63-7-2510 (2010). "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate." *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013).

Viewed from Children's perspective, we find TPR is in their best interest. Children have been in foster care since August 2013, approximately four years. Children were removed because of the deplorable conditions in the home, which were so bad that Child Three had blisters on her head from being bitten by bugs. The guardian ad litem (GAL) testified Children were very dirty when they were removed and had to be slowly introduced to taking baths. Although Mother and Father visited Children regularly, Norris and the GAL testified Mother only paid attention to Child Three and Father only recently began interacting with Children at visits. Conversely, the GAL testified Children were doing very well in foster care. The GAL explained Child One and Child Two required special education classes when they first entered foster care, but they were no longer in special education classes at the time of the TPR hearing. Similarly, the GAL noted Child Three required speech therapy, occupation therapy, and physical therapy when she first entered foster care, and recent testing determined continued therapies were no longer needed. Children's foster parents expressed a desire to adopt them. Although Child One and Child Two were in a different foster home than Child Three, Children still had a relationship with one another because the foster families interacted together. Therefore, in the interest of permanency, safety, and future stability, we find TPR is in Children's best interest. *See S.C. Dep't of Soc. Servs. v. Cameron N.F.L.*, 403 S.C. 323, 329, 742 S.E.2d 697, 700 (Ct. App. 2013) ("[T]his court has considered future stability when determining whether TPR is in a child's best interest."); *S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005) ("Parents have a fundamental interest in the care, custody, and management of their children. . . . However, a child has a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care.").

Finally, we find the issue of Children's permanent plan is not properly before this court.  The permanent plan of TPR and adoption was set forth in the January 15, 2015 permanency planning order, which was a final order.  *See Hooper v. Rockwell*, 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999) ("[A]ny order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order that a party must timely appeal.").  Mother and Father did not serve a notice of appeal from that order within thirty days; thus, this court lacks jurisdiction to consider this issue.  *See* Rule 203(b)(1), (3), SCACR (providing a notice of appeal from a family court order "shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment"); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 14-15, 602 S.E.2d 772, 775 (2004) ("The requirement of service of the notice of appeal is jurisdictional, *i.e.,* if a party misses the deadline, the appellate court lacks jurisdiction to consider the appeal and has no authority or discretion to 'rescue' the delinquent party by extending or ignoring the deadline for service of the notice.").

Based on the foregoing, the decision of the family court is

**AFFIRMED.**[1]

**SHORT, WILLIAMS, and KONDUROS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.