**-THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Lena Germernita Jackson and Tyrone Lavern Nesmith,
Sr., Defendants,

Of whom Lena Germernita Jackson is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2017-000143

———————————

Appeal From Williamsburg County
Gordon B. Jenkinson, Family Court Judge

———————————

Unpublished Opinion No. 2017-UP-368
Submitted September 15, 2017 – Filed October 2, 2017

———————————

**AFFIRMED**

———————————

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Ernest Joseph Jarrett, of Jenkinson Jarrett & Kellahan,
PA, of Kingstree, for Respondent.

William M. O'Bryan, Jr., of O'Bryan & O'Bryan, of Kingstree, for the Guardian ad Litem for the minor.

---

**PER CURIAM:**  Lena Germernita Jackson (Mother) appeals the family court's order terminating her parental rights to three of her minor children.[1]  On appeal, Mother argues (1) the family court had an affirmative duty to advise her on both the record and in the merits hearing order as to the possibility of TPR if she did not complete her placement plan pursuant to section 63-7-1680(G) of the South Carolina Code (Supp. 2016), (2) clear and convincing evidence did not support the statutory grounds for termination of parental rights (TPR), and (3) the Department of Social Services (DSS) did not make reasonable efforts to help Mother complete her treatment plan.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414-15, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court the family court erred in its findings.  *Id.* at 385, 709 S.E.2d at 652.

Initially, we find the issue of whether the family court failed to advise Mother on the record that her failure to follow the placement plan could result in TPR, not preserved.  *See Hickman v. Hickman*, 301 S.C. 455, 457, 392 S.E.2d 481, 482 (1990) ("A party cannot use Rule 59(e)[, SCRCP] to present to the [family] court an issue the party could have raised prior to judgment but did not.").

Next, we find clear and convincing evidence supports the statutory grounds for TPR.  The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and TPR is in the best interest of the child.  S.C. Code Ann. § 63-7-2570 (Supp. 2016).  The grounds for TPR must be proved by clear and convincing evidence.  *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

---

[1] The family court also terminated the parental rights of Tyrone Lavern Nesmith, Sr., the children's father.

First, we find clear and convincing evidence supports TPR based on Mother's failure to remedy the condition that caused the children's removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2016) (providing a statutory ground for TPR is met when a child has been removed from the parent and has been out of the home for six months following the adoption of a placement plan, and the parent has not remedied the conditions that caused the removal). Here, the children were in foster care just over eighteen months. Although the children were not removed until November 2014, Mother started treatment services in June 2014. Despite having almost two years to complete her placement plan, Mother made little progress. Specifically, Mother did not complete drug and alcohol treatment, comply with the services or medication prescribed by Waccamaw Mental Health (Waccamaw), or obtain and maintain suitable housing. DSS first referred Mother to Waccamaw on September 15, 2014, and again in November 2015; both times Waccamaw closed the cases for noncompliance. Mother admitted her outstanding bill was not the reason she did not attend services at Waccamaw; she did not attend Waccamaw services because of transportation issues. However, Kathy Speights, a foster case manager, offered to drive Mother "any[ ]time that she needed me." Nancy Canty, an intake therapist and counselor at Waccamaw, and Stefanie McKnight, a foster caseworker, stated Mother was also noncompliant in taking her prescribed medications. Mother also failed to attend treatment at Williamsburg County Alcohol and Drug Abuse (WCADA) for her drug addiction. Finally, although Mother had housing on several occasions, Mother failed to maintain suitable housing for various reasons, including lack of running water, no place for the children to sleep, or the home was unclean. Accordingly, we find Mother failed to remedy the conditions that caused the children's removal.

Second, we find clear and convincing evidence supports TPR based on Mother's diagnosable condition that made her unlikely to provide minimally acceptable care to the children. *See* S.C. Code Ann. § 63-7-2570(6) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he parent has a diagnosable condition unlikely to change within a reasonable time including, but not limited to, addiction to alcohol or illegal drugs, or prescription medication abuse . . . and the condition makes the parent unlikely to provide minimally acceptable care of the child."); *id.* ("It is presumed that the parent's condition is unlikely to change within a reasonable time upon proof that the parent has been required by the department or the family court to participate in a treatment program for alcohol or drug addiction, and the parent has failed two or more times to complete the program successfully or has refused at two or more separate meetings with the department to participate in a treatment program."). McKnight referred Mother to WCADA in November 2014, and although Mother attended treatment "pretty consistently" through

December 2014, her attendance became inconsistent in January 2015 and WCADA closed Mother's case in May 2015 due to loss of contact. DSS referred Mother to WCADA a second time in January 2016, but Mother failed to appear for any of the scheduled appointments. Moreover, Mother tested positive for marijuana on November 4, 2014; November 20, 2014; December 1, 2014; and February 12, 2015. Mother also tested positive for opiates on January 22, 2015, and for cocaine from a hair strand test administered on April 23, 2015. Furthermore, Mother failed to take at least one drug screen. Accordingly, we find clear and convincing evidence shows Mother had a diagnosable condition that made it unlikely she could provide minimally acceptable care to the children.

Third, we find clear and convincing evidence showed the children were in foster care fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months."). The children entered foster care on November 10, 2014, and remained there continuously for over eighteen months before the TPR hearing. Further, our review of the record shows Mother—not DSS—caused the delay in reunification by her failure to engage in treatment services. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) (providing a court applying this statutory ground "must find that severance is in the best interests of the child, and that the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected"). Accordingly, we find clear and convincing evidence shows the children were in foster care fifteen of the most recent twenty-two months.

Fourth, we find clear and convincing evidence the children were harmed, and due to the severity or repetition of the harm, the home was not likely to be made safe within twelve months. *See* S.C. Code Ann. § 63-7-2570(1) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed as defined in Section 63-7-20 [of the South Carolina Code (Supp. 2016)], and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months."); S.C. Code Ann. § 63-7-20(6) (Supp. 2016) (providing harm occurs when the parent "fails to supply the child with adequate food, clothing, shelter, or education . . . , supervision appropriate to the child's age and development, or health care though financially able to do so or offered financial or other reasonable means to do so[,] and the failure to do so has caused or presents a substantial risk of causing physical or mental injury.). Here, Mother

agreed she physically neglected the children when she inappropriately disciplined them, exposed them to domestic violence, and provided an inadequate home. Mother was subsequently diagnosed with substance abuse issues and mental health issues; despite multiple referrals over many years, Mother did not address those issues. Mother has not yet obtained a suitable home. Because Mother did not address her underlying substance and mental health issues, we find clear and convincing evidence shows it is unlikely Mother's home would be safe within twelve months.

Additionally, we also find TPR was in the children's best interest.[2] "In a [TPR] action, the best interest of the child is the paramount consideration." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 454, 639 S.E.2d 165, 168 (Ct. App. 2006). "A primary objective of the TPR statutes is to free children for the stability adoption can provide." *S.C. Dep't of Soc. Servs. v. Janice C.*, 383 S.C. 221, 230, 678 S.E.2d 463, 468 (Ct. App. 2009); *see also* S.C. Code Ann. § 63-7-2510 (2010). Although Mother contributed in-kind support and regularly visited, Mother could not provide a suitable home for the children. According to McKnight, Mother loved the children and they had a good bond, but Mother had almost two years to take advantage of the treatments services DSS offered and she did not do so. The record suggests Mother still had a drug problem and had not addressed her mental disorders through counseling or medication. Furthermore, Speights believed some of the children's lingering behavioral problems continued because of Mother's influence during visitation. Speights also believed TPR was in the children's best interest because Mother had ample time to complete her placement plan but failed to do so. The children need permanency and their foster parents are willing to offer that to them. Accordingly, we find TPR was in the children's best interest.

Finally, we find DSS made reasonable efforts to assist Mother. DSS made multiple referrals on behalf of Mother to Waccamaw and WCADA and made additional referrals to Hemingway Light House, Shoreline, and Coastal Recovery. McKnight even researched possible transportation options for mother to attend treatment services and Speights offered to pick Mother up "any[ ]time that she needed me to come there." Additionally, DSS arranged to pay Mother's unpaid Waccamaw bill if Mother attended counseling going forward and paid a $20

---

[2] Although Mother did not argue TPR was not in the best interest of the children, we consider this issue because "procedural rules are subservient to the court's duty to zealously guard the rights of minors." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000).

session fee.  Accordingly, this court finds clear and convincing evidence shows DSS made a meaningful offer of services.

**AFFIRMED.**[3]

**LOCKEMY, C.J., and HUFF and HILL, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.