**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Josette Gregory, Sheridan Littlejohn, and John Doe,
Defendants,

Of whom Josette Gregory is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2019-001020

———————

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge

———————

Unpublished Opinion No. 2021-UP-080
Submitted February 5, 2021 – Filed March 8, 2021

———————

**AFFIRMED**

———————

Kimberly Yancey Brooks, of Kimberly Y. Brooks,
Attorney at Law, of Greenville, for Appellant.

Amanda B. Stiles, of the South Carolina Department of
Social Services, of Greenville, for Respondent.

Robert A. Clark, of Greenville, for the Guardian ad Litem.

_____

**PER CURIAM:**  Josette Gregory (Mother) appeals the family court's order terminating her parental rights to Child 1 and Child 2 (collectively, Children).  On appeal, Mother argues the family court erred in finding termination of parental rights (TPR) was in Children's best interest.  We affirm.[1]

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court the family court erred in its findings.  *Id*. at 385, 709 S.E.2d at 652.

The family court may order TPR upon finding one or more of the twelve statutory grounds is satisfied and TPR is in the best interest of the child.  S.C. Code Ann. § 63-7-2570 (Supp. 2020).  "In a [TPR] case, the best interests of the children are the paramount consideration."  *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000).  "The interests of the child shall prevail if the child's interest and the parental rights conflict."  S.C. Code Ann. § 63-7-2620 (2010).  "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."  *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013).

After this appeal was filed, Mother filed a motion with this court under Rule 261, SCACR, to vacate the family court's order as to Child 1 and remand the matter to the family court for further permanency planning proceedings.  The Department of Social Services (DSS) and the guardian ad litem (the GAL) consented to this relief.  According to an affidavit from a DSS caseworker, DSS believed granting custody of Child 1 to Mother would be in his best interest.  The caseworker alleged Child 1 had run away from his foster home, the relative adoption DSS was pursuing for Child 1 had fallen through, and Child 1 had been living with Mother for over six

_____

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

months without incident.  The caseworker also alleged Child 1 would turn eighteen in less than four months, he was gainfully employed, and he was interested in obtaining his high school diploma.  Due to the unique nature of this request and cognizant that a child's best interest is the paramount consideration in a TPR proceeding, this court remanded the matter to the family court for further proceedings.  This court provided the family court could also consider Child 2's best interest on remand.

At the remand hearing, DSS and the GAL no longer recommended reunification between Child 1 and Mother.  Likewise, DSS and the GAL recommended the prior TPR order remain in effect but sought to change Child 1's permanent plan to another planned permanent living arrangement (APPLA).[2]  Mother testified Child 1 had lived with her for about a year but acknowledged he "might throw tantrums and leave and go stay with his [older] sister for a few weeks or whatever."  She described Child 1 as rebellious and stated he pushed her and yelled at her; as a result, she contacted Sheridan Littlejohn (Father) for assistance even though a prior order prohibited contact between Father and Children.  Mother testified she did not live with Father but they remained intimate.  The DSS caseworker testified Mother had ongoing anger issues; she recalled talking with Child 1 on the phone a few weeks before and hearing Mother yelling and screaming in the background.  She stated Child 1 went to stay with his grandfather for a few days after that incident.  Following the hearing, the family court issued an order finding it would not be in Children's best interest to alter the prior TPR order.  The court ordered Child 1's permanency plan would be APPLA and Child 2's permanency plan would remain adoption.

Viewed from Children's perspective, we find TPR is in their best interests.  Initially, we are concerned about Mother's ability to protect Children from harm.  Mother has had six indicated cases with DSS, causing Child 1 to be placed in foster care four times since 2003 and Child 2 to be placed in foster care three times.  According to Amme Nation, a DSS foster care worker, the prior indicated cases against Mother arose from issues with housing, criminal domestic violence involving Father, missed medical appointments for Child 2, and corporal punishment of Child 1.  Nation stated the most recent removal occurred after Child 1 had "substantial marks on his face," which he alleged were caused by Father beating him.  Nation testified Mother allowed Father into the home even though a prior order prohibited him from being around Children.  Nation further testified Mother stated Father had "every right to discipline."  Although Mother

---

[2] *See* S.C. Code Ann. § 63-7-1700(C)(2) (Supp. 2020).

completed services in the past, including seven parenting classes, anger management in 2015, and family violence intervention in 2008 and 2014, Nation was concerned Mother "fail[ed] to take responsibility" for her actions. The GAL explained he had not seen Mother change, averred she had anger management issues, and believed she had detrimental "beliefs on how to raise children." Based on the foregoing, we find Mother cannot adequately protect Children from harm and reunification is thus unlikely.

We also find the length of time Children have been outside of Mother's custody supports finding TPR is in their best interests. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (discussing among other considerations for best interest that the child had been in foster care for almost seven years). Nation testified Child 1 entered foster care four times since 2003 and Child 2 entered foster care three times. Since October 2017, Children have been in foster care for over three years. We find the length of time Children have been in foster care supports finding TPR is in their best interests. *See* S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of this article is to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life."); S.C. Code Ann. § 63-7-2620 (2010) ("This article must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship.").

Additionally, we find Child 2 will have a greater opportunity of obtaining permanency and stability through TPR. *See S.C. Dep't of Soc. Servs. v. Janice C.*, 383 S.C. 221, 229-30, 678 S.E.2d 463, 467-68 (Ct. App. 2009) (considering among other factors whether TPR would "provide future stability for [the c]hildren"). Although Children were not in preadoptive homes at the time of the TPR hearing, DSS is not required to identify preadoptive resources before proceeding with TPR. *See S.C. Dep't of Soc. Servs. v. Cameron N.F.L.*, 403 S.C. 323, 330-32, 742 S.E.2d 697, 700-01 (Ct. App. 2013) (reiterating DSS does not have to identify a preadoptive home prior to TPR). Child 2 is still relatively young and DSS is pursuing a home for her. We acknowledge Child 2 had at least four placements since entering foster care in October 2017. However, the GAL believed a large portion of the issues that caused the number of placements stemmed from Mother. Specifically, the GAL stated Mother told Children to "basically argue with [adults]" and not to "trust DSS." Additionally, Mother acknowledged telling

Children "not to trust DSS."  We are concerned about these statements from Mother and the effect they have on Child 2.

We acknowledge Children appeared to have a bond with Mother.  However, at the TPR hearing, Nation and the GAL explained the visits with Mother were not appropriate or beneficial to Children.  Nation testified Mother "discuss[e]d the case," cussed, talked about "family disputes," and generally "ke[pt] it more about her" rather than "focusing on what[ wa]s positive for [C]hildren."  The GAL stated Mother "consistently talked negative[ly] about DSS" and had an "aggressive, negative attitude toward DSS and 'the system'" during visits.  The foregoing shows that although Children enjoyed spending time with Mother, the visits were not in their best interest.

Based on the foregoing, we find TPR is in Children's best interests.

**AFFIRMED.**

**LOCKEMY, C.J., and GEATHERS and HEWITT, JJ., concur.**