**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Jennifer Hale and Timothy Williamson, Defendants,

of whom Jennifer Hale is the Appellant

and

Timothy Williamson is a Respondent.

In the interest of minors under the age of eighteen.

Appellate Case No. 2025-000503

Appeal From Anderson County
M. Scott McElhannon, Family Court Judge

Unpublished Opinion No. 2026-UP-053
Submitted January 29, 2026 – Filed February 3, 2026

**AFFIRMED**

Kindle Kay Johnson, of K. Johnson Law Firm, LLC, of
Rock Hill, for Appellant.

Nima Fiuzat, of Easley, for Respondent Timothy Williamson.

Andrew Troy Potter, of Anderson, for Respondent South Carolina Department of Social Services.

John Marshall Swails, Jr., of Greenville, for the Guardian ad Litem.

_____

**PER CURIAM:** Jennifer Hale (Mother) appeals a family court order terminating her parental rights to her four minor children (collectively, Children). On appeal, Mother argues the family court erred in finding termination of parental rights (TPR) was in Children's best interests.[1] We affirm pursuant to Rule 220(b), SCACR.

We hold the family court did not err in finding TPR was in Children's best interests. *See Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019) ("On appeal from the family court, the appellate court reviews factual and legal issues de novo."); *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018) ("[D]e novo review allows an appellate court to make its own findings of fact; however, this standard does not abrogate two long-standing principles still recognized by our courts during the de novo review process: (1) a trial [court] is in a superior position to assess witness credibility, and (2) an appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial [court]."); *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."); S.C. Code Ann. § 63-7-2620 (2010) ("The interests of the child shall prevail if the child's interest and the parental rights conflict."). One of the children, Child 2, was removed from the care of Mother and

---

[1] The family court found clear and convincing evidence of four statutory grounds for TPR. Mother acknowledges in her appellate brief "that at least one statutory ground for [TPR] has been proven." *See* S.C. Code Ann. § 63-7-2570 (Supp. 2025) (explaining that "[t]he family court may order [TPR] upon a finding of one or more of [twelve statutory] grounds and a finding that termination is in the best interest of the child").

Timothy Williamson (Father; collectively, Parents) in September 2022 due to medical neglect, and the other three children were removed from the hotel in which Parents resided one year later, in September 2023, after the children tested positive for drugs. At the time of the December 2024 TPR hearing, Parents continued to reside together in the same hotel—a hotel to which Father attributed the children's positive drug screens. Moreover, Mother acknowledged Father had not completed any of his court-ordered placement plan, despite having had two years to do so, and could not have unsupervised contact with Children until he had completed it. Father also admitted he was arrested for possession of marijuana in mid-2024— almost one year after the three children were removed—and testified the charge had been dismissed. He was unsure why the public record reflected that a trial was held in his absence and resulted in a guilty finding. We acknowledge the evidence showed Mother completed court-ordered substance abuse treatment, remained employed throughout the case, visited Children regularly, and shared a bond with them; however, we are unable to overlook the fact that over two years after this case began, Mother continued to reside with Father in housing that was not safe or appropriate for Children.

Further, the Department of Social Services (DSS) caseworker and the guardian ad litem (GAL) testified to the improvements each child had made since entering foster care. The evidence showed Child 2 was almost six years old at her 2022 removal and had difficulty walking, was nonverbal, and required a feeding tube; at the time of the hearing, she no longer required the feeding tube, could express emotions other than frustration, and was able to keep up with her siblings during visits. The youngest child, Child 4, was diagnosed with autism and was also nonverbal when he was removed. He was also not potty trained when he was removed despite being almost six years old. According to the GAL, at the time of the TPR hearing, Child 4 was potty trained, able to speak several words, and "thriving" in his therapeutic foster home. The GAL also testified that although Child 1 and Child 3 previously had not regularly attended school, they "loved" school at the time of the hearing. She confirmed Child 1 and Child 3 were closely bonded and placed in the same foster home, where they were doing well.

The caseworker and GAL confirmed that Child 2 resided in a pre-adoptive foster home. Although the three other children were not in pre-adoptive placements at the time of the TPR hearing, the caseworker confirmed DSS was looking for adoptive resources for them. The GAL testified to her understanding that a potential foster family had been identified to adopt the three children together and would make a decision following the hearing. Further, the GAL, who saw Children monthly and had attended fifteen to twenty visitations between Parents

and Children, believed TPR was in Children's best interests. Accordingly, based on Mother's failure to provide a safe, stable home for Children, their need for permanency, and the likelihood they can be adopted, we hold TPR is in their best interests. *See* S.C. Code Ann. § 63-7-2510 (2010) (describing the purpose of the TPR statute as "to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life"); *cf. S.C. Dep't of Soc. Servs. v. Janice C.*, 383 S.C. 221, 229-31, 678 S.E.2d 463, 467-68 (Ct. App. 2009) (finding TPR was not in Children's best interests despite the unlikelihood Mother would ever be able to successfully parent them because the evidence showed Mother was making progress on her placement plan, Children enjoyed visits, the GAL did not observe Mother's interactions with Children, and Children were unlikely to be adopted); *Charleston Cnty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 102-04, 627 S.E.2d 765, 774-75 (Ct. App. 2006) (finding DSS failed to present any evidence that TPR was in Child's best interest when Father undertook "extraordinary" measures to establish a relationship with Child, the GAL recommended TPR without speaking to Father, and Child's foster parents had not indicated an interest in adoption).

**AFFIRMED.**[2]

**THOMAS, MCDONALD, and CURTIS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.